1  J.J. Kohut #AN1162
2  ASP/410-18-5L
   P.O. Box 904
3  Avenal, Ca. 93204-0904
   In Pro Se

FILED

SEP 01 2023

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

6  JONATHON J. KOHUT,

7          Plaintiff,

8  vs.

9  M. MARTIN, et al.,

10         Defendants.

11

Case No.1:22-cv-00472-HBK(PC)

42 U.S.C. §1983/28 U.S.C. §1367
CIVIL RIGHTS COMPLAINT;VOLUME
OF EXHIBITS/DECLARATION IN
SUPPORT THEREOF;CAL.CIV.CODE
§52.1;TORTS OF ABUSE OF PROCESS,
NEGLIGENCE, CONSPIRACY, AND
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS

[JURY TRIAL DEMANDED]

12  FIRST AMENDED COMPLAINT

13                    • Introduction •

14

15          This civil rights action is brought pursuant to 42 U.S.C.
   §1983, by Plaintiff Jonathon J. Kohut, in pro se, currently
16  housed by the CDCR. Allegations contained herein stem from an
   incident mischaracterized as a 'fight' by PVSP officials, the
17  fabricated reporting of the incident by Defendants, the Due
   Process violations inflicted and later upheld by Defendants
18  during disciplinary proceedings in adjudication, and finally
   the Plaintiff's inability to obtain relief through any and all
19  administrative remedies available for the alleged violations
   of his 1st & 14th Amendment gaurantees, his Art. I, §§1 & 7
20  (U.S.Const.;Calif.Const.), Cal.Civ.Code §52.1(The Bane Act),
   along with claims for relief for inflicted torts captioned
21  above. Plaintiff is seeking declaratory, injunctive, and
   monetary relief.

22                         I.

23              • Venue & Jurisdiction •

RECEIVED

SEP 01 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

24  1.    Claims under 42 U.S.C. §1983 for redress of violations of federal rights by
25  those vested with state authority, this court retains jurisdiction over pursuant to
   28 U.S.C. §§1331, and 1343;
26
27  2.    This court retains jurisdiction over claims for declaratory relief pursuant
   to 28 U.S.C. §2201, and Rule 57 of the Federal Rules of Civil Procedure;
28  3.    Venue is proper as each violation alleged occurred and/or was carried out

within the district of filing pursuant to 28 U.S.C. §1391(b)(2).

## II.
### · Parties ·

4.    PLAINTIFF;Jonathon Joseph Kohut, currently housed at Avenal State Prison (hereafter ASP), formerly housed at Pleasant Valley State Prison(hereafter PVSP) during times relevant;alleges being denied material witnesses during disciplinary hearing, inter alia, and that CDCR officials, DEFENDANTS, have denied him relief to which he is legally entitled;

5.    DEFENDANT;M. Martin,Chief Disciplinary Officer at PVSP during times relevant, refused to acknowledge Plaintiff's entitlement to relief, repeatedly upheld the verdict entered;sued in individual/official capacities;

6.    DEFENDANT;Lt. Martin, conducted confidential inquiry in connection with the Plaintiff's allegations of submission of false narratives, notwithstanding the evidence in support of Plaintiff's allegations, entered that no CDCR policy(ies)had been violated;sued in individual/official capacities;

7.    DEFENDANT;D. May, Senior Hearing Officer(hereafter SHO), presided over the hearing at issue, denied Plaintiff's request for 4 winesses on his behalf, failed to enter into the record any reason(s) in support of denial, subsequently claimed that he could not definitively recall any request being made by Plaintiff;sued in individual/official capacities;

8.    DEFENDANT;S. Wiswell, authored Rules Violation Report(hereafter RVR)log no. 7083306, alleged to have grossly fabricated his account which has directly and proximately given rise to this litigation;sued in his individual capacity;

9.    DEFENDANT;R. Blancas, officer working alongside of S. WISWELL, allegations include submission of a fabricated narrative;sued in his individual capacity;

10.    DEFENDANT;M. Reyes, control booth officer, allegations include submission of a fabricated narrative;sued in his individual capacity;

11.    DEFENDANT(S);John/Jane Does #1-3 are parties whose true identities are not known to PLAINTIFF at this time. Allegations set forth against these DEFENDANTS include:act(s) of retaliation against the Plaintiff arising from his seeking relief through the 602 process, the conspiring to enter knowlingly false statements and/or findings in connection with the allegations set forth throughout this complaint;sued in their individual/official capacities. Upon the ascertainment of the true identities of these DEFENDANTS, PLAINTIFF shall seek leave to amend this complaint to properly

name as parties in this litigation these mentioned DEFENDANTS.

### III.

### • Exhaustion of State Administrative Remedies •

12.    The submitted Volume of Exhibits(hereafter VOE)contains at 4.1, and 4.2, the initial submission of Claim No.21005089 that was noticed by the Department of General Services on 06/07/2021. The claim was denied on 11/24/2021, citing the complexity of issues set forth being with propriety   litigated in a court of law. PLAINTIFF has hereby exhausted the claims as they pertained to the circumstances at the time of filing of the claim. PLAINTIFF further alleges, that all requirements for inclusion of state law claims and the parties to which they pertain, have been adhered to, including the 602 process within CDCR.

### IV.

### • Statement of Factual Allegations •

PLAINTIFF JONATHON J. KOHUT HEREBY ALLEGES:

13.    PLAINTIFF, while housed in the oftentimes precarious and potentially violent environment to which he is currently confined, makes cognizant and conscious efforts to avoid any form of violence at all costs. The incident set forth below, is one such example. As the incident itself was unfolding, PLAINTIFF was actively trying to avoid any sort of altercation, and took measures far in excess of which he was obligated to take in his efforts, which ultimately proved to be unsuccessful. With his focus on his Board of Parole Hearings suitability hearing that was upcoming(BPH hearing was scheduled for 04/06/2022), PLAINTIFF retreated across 35 to 40 feet of the dayroom floor before he was forced to defend himself against an advancing attacker that would not relent. Subsequently charged with 'fighting', PLAINTIFF would later be found guilty of the charge during a hearing in which DEFENDANT D. MAY denied PLAINTIFF four requested witnesses that would testify on his behalf, and this DEFENDANT furthermore failed to enter such reasoning for his denial in the findings. PLAINTIFF hereby alleges that the actions of PVSP officials have denied him Due Process under the 14th Amendment, Equal Protection of the law        , inter alia, and have inflicted injuries and damages consistent with the claims for relief set

3

1  forth and enumerated below.

2  · The Incident. ·

3  14.   On the night of April 28, 2021, PLAINTIFF was wiping tables in his housing
4  unit, when at some point he was approached by an individual who was agitated, and
5  was immediately challenging him to a fight.(assailant identified as Jacob Mills,
6  #BH8082) PLAINTIFF declined and went about wiping tables. It is important to note,
7  that it was approximately 8:45 pm and the unit was on restricted movement owing to
8  COVID-19 protocols. PLAINTIFF'S attacker was erroneously let out of his cell and
9  was not supposed to be in the dayroom at all.(see VOE, decl. at ¶¶5-7)

10  15.   PLAINTIFF went about and continued on to another table, Mills followed and
11  as PLAINTIFF began to wipe a table, Mills balled up his fists and began swinging at
12  the PLAINTIFF. At this point, there was no staff presence in the dayroom, and the
13  PLAINTIFF raised his left arm as he began retreating from the repetative swings of
14  his attacker and staying beyond his reach. As Mills continued his attack, PLAINTIFF
15  retreated across approximately 35-40 feet of the dayroom, avoiding no fewer than 8
16  to 10 swings at his face as blows continuously glanced off of his outstretched arm.
17  (see VOE at #3.1.3)

18  16.   At some point, PLAINTIFF in his peripheral, noticed DEFENDANTS S. WISWELL,
19  and BLANCAS exit the office and take notice of the events taking place. As swings from
20  Mills continued, the alarm was activated and DEFENDANTS began to yell orders to,
21  "get down!get down!" These factors had no bearing on the attack that continued, and
22  at some point one of Mills' knuckles grazed the lip of the PLAINTIFF.(see VOE at
23  decl. ¶¶9-11,13)

24  17.   While still in retreat, PLAINTIFF returned a single blow that struck Mills
25  in his left orbital region, knocking him to the ground. PLAINTIFF maintained his
26  focus on Mills who had landed on his rear, and as his eyes refocused, immediately put
27  his hands underneath himself in an attempt to rise to his feet. PLAINTIFF leaned
28

4

1  forward anticipating further attack and at that precise moment, DEFENDANT S. WISWELL

2  pepper sprayed PLAINTIFF directly in his face and neck which caused him to prone out

3  immediately. As PLAINTIFF was proned out, DEFENDANT S. WISWELL delivered another

4  burst of pepper spray to the back of PLAINTIFF'S head, and the backs of his hands,

5  and thereby ending the incident.          (see VOE at decl.¶¶12,14-15)

6  18.    After being sprayed, responding staff(not named)escorted PLAINTIFF to the

7  D Facility gym for decontamination, and for medical evaluation.(see VOE Ex.#1.1-2,

8  decl.¶15)

9  19.    On 04/30/2021, PLAINTIFF received his initial copy of the RVR log no.7083306

10 which prompted his submission of 602 log no.#114099(see Ex.#2.1.1-4, and #3.1.1-7,

11 respectively)through which PLAINTIFF made his requirement of witnesses on his behalf

12 for adjudication purposes abundantly clear. In addition, he directly challenged the

13 narrative submitted by DEFENDANT S. WISWELL.

14 20.    Subsequent to the issuance of the initial RVR, PLAINTIFF was issued an

15 incident log package(log no.#21670), with three narratives submitted by DEFENDANTS

16 present during the incident.(see Ex.#2.2.1-3) An additional 602 was submitted(log

17 no.#125056, not included)essentially challenging the accounts submitted by the

18 DEFENDANTS R. BLANCAS, and M. REYES.

19

20                      · The Disciplinary Hearing ·

21 21.    On 05/21/2021, a disciplinary hearing was held in adjudication of RVR log no.

22 #7083306, with DEFENDANT D. MAY serving as the SHO. During this hearing, PLAINTIFF

23 made a specific request to have 4 witnesses testify on his behalf. These witnesses

24 would have provided testimony in support of PLAINTIFF'S position of self defense.

25 PLAINTIFF provided his account, and without summoning a single witness, DEFENDANT

26 D. MAY found PLAINTIFF guilty of the charge of 'fighting'. Available and at the SHO's

27 disposal were not only the witnesses requested, but also alternate means of appearing

28 such as telephonically, and/or Zoom/Skype.(neither form would have been necessary for

1   each witness requested was housed in the same unit as the PLAINTIFF at the time of

2   the hearing) DEFENDANT D. MAY, PLAINTIFF hereby alleges both failed to summon the

3   witnesses requested, and moreover, failed to enter any reason in the findings that

4   would explain the reasoning relied upon for such a denial. For these two reasons in

5   support, PLAINTIFF alleges that DEFENDANT D. MAY effectively violated PLAINTIFF'S

6   right to procedural and substantive Due Process under the 14th Amendment of the U.S.

7   Constitution, Art.I, §7 of the California Constitution, and §52.1 of the Cal.Civ.

8   Code(The Bane Act). PLAINTIFF did not receive a fair hearing.

9   22.    PLAINTIFF further alleges, that the narratives submitted by DEFENDANTS

10  S. WISWELL, R. BLANCAS, and M. REYES were comprised of numerous fabrications and

11  falsities that effectively provided DEFENDANT D. MAY with a false account of what

12  actually took place, and that have essentially given rise to the allegations set

13  forth throughout this complaint. These narratives formed the basis of the information

14  utilized and relied upon by DEFENDANT D. MAY to arrive at, and to subsequently enter

15  a finding of guilt. Moreover, the narratives also served to provide the basis for

16  DEFENDANT M. MARTIN to repeatedly uphold the findings despite numerous attempts by

17  the PLAINTIFF to obtain administrative relief. PLAINTIFF further alleges, that under

18  California law, DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES have perpetrated a

19  misdemeanor against the PLAINTIFF, and insodoing have caused the PLAINTIFF actual

20  injuries and damages in the forms of; loss of good conduct credits, a violent guilty

21  finding being currently maintained in PLAINTIFF'S central file, and as a result, have

22  adversely affected the legal standing of the PLAINTIFF with respect to suitability

23  proceedings before the BPH. The narratives that are now a part of the PLAINTIFF'S

24  permanent record, contain degrees of prejudicial and false compositions within their

25  scope that the PLAINTIFF simply cannot overcome during a suitability hearing.

26                    · Materiality of Witness Testimony Denied ·

27  23.    PLAINTIFF'S request for 4 witnesses during the hearing was made for the sole

28  purpose of providing the SHO with a truthful account of what actually took place. The

discluded testimony would have provided support of the PLAINTIFF'S version to wit;

1) PLAINTIFF was reacting in self defense and was warding off an attack; 2) The floor officers, DEFENDANTS S. WISWELL, and R. BLANCAS were in the office at the time the incident took place initially, and they not only fabricated their accounts, but also they did not see the inception of the event; 3) That at no time were Mills and the PLAINTIFF trading blows to the 'face and torso', as alleged by DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES, and that PLAINTIFF swung at his attacker a single time; 4) At no point did Mills ever make any attempt to cover himself up while on the ground as DEFENDANT S. WISWELL claimed(see Ex.#2.1.1,2.2.1), and 5) That DEFENDANT S. WISWELL sprayed PLAINTIFF initially, and then sprayed PLAINTIFF an additional time after the PLAINTIFF had already proned out and the incident had effectively been contained. PLAINTIFF hereby alleges that the refusal of the SHO DEFENDANT D. MAY to summon the witnesses requested by the PLAINTIFF effectively denied him the opportunity to establish his evidence in support, and that furthermore, the evidence relied upon in support of the findings would have been challenged directly, and called into question.(see #4 at 7:7-9 above, also comment 1 at Ex.#2.3.5)

24.    PLAINTIFF further alleges that DEFENDANT D. MAY, with intentional malice and ill will, ignored the inconsistencies that PLAINTIFF pointed out with respect to the accounts provided by DEFENDANTS present during the incident, and the medical reports submitted by medical personnel(Ex.#1.1-2, and also 2.1.1, 2.3.1-3), which readily render apparent that there are many discrepancies and/or inconsistencies contained within the reports utilized to find PLAINTIFF guilty, most glaringly the lack of any injuries consistent with the accounts provided and relied upon. Plaintiff further alleges that DEFENDANT D. MAY in no way adhered to state and/or federal controlling authorities that govern disciplinary hearings in an institutional setting, insofar as those authorities pertain to impartiality that is required on the part of those whom sit in adjudicatory capacities during such proceedings. PLAINTIFF alleges that this particular DEFENDANT not only knew his subordinates had falsified their reports, but such knowledge served to prevent him from summoning the witnesses requested.

25.    PLAINTIFF further alleges that the 602 process at PVSP, and subsequently the CDCR Office of Appeals(hereafter OOA)in Sacramento, essentially have ignored the plethora of substantive and procedural due process violations set forth by the 602's submitted regardless of evidentiary support proffered, and that the process serves essentially as a token process that avoids liabilities, and provides no form of tangible or even figurative relief, regardless of the merit of PLAINTIFF'S claims. The process is all about the amelioration of the wrongdoing on the parts of their colleagues, plain and simple.

· The 602 Grievance Procedure ·

26.    PLAINTIFF began to submit 602's immediately upon receiving the initial copy of RVR log no.#7083306(Ex.#2.1.4, also 3.1.1-6) PLAINTIFF alleged staff misconduct stemming from the submission of the false narratives aforementioned, and as a result a confidential inquiry was initiated.(see also narratives at Ex.#2.2.1-3) DEFENDANT LT. MARTIN was assigned to conduct the inquiry pursuant to 15 CCR §3084.9(i)(3)(B). DEFENDANT LT. MARTIN was charged with interviewing staff and inmates in connection with the inquiry. This inquiry resulted in a finding that staff had violated no CDCR policy(ies). PLAINTIFF hereby further alleges that the process was a farce, and that it was a simple exercise in going through the motions, without any degree of any fair consideration and/or impartiality.

27.    Subsequent to the interviews conducted by DEFENDANT LT. MARTIN of selected inmates, selected by himself after being advised by DEFENDANT R. BLANCAS, PLAINTIFF had occasion to speak with some of those interviewed, and was informed that not only had this DEFENDANT failed to record anything in writing, but also that this process was kept entirely secret from the PLAINTIFF insofar as evidence relied upon, and/or gleaned in the process resulting in the finding of no policy violation(s). Upon information and belief, not only was information provided in support of PLAINTIFF'S version of events, but that this DEFENDANT acted in conspiracy with other officials in an intentional and malicious effort to deny PLAINTIFF relief to which he was

entitled under the law.

28.    PLAINTIFF also submitted 602 log no.#123815(Ex.#3.2.1-8)challenging the guilt finding of DEFENDANT D. MAY. This process revealed a part of what was withheld from the PLAINTIFF with respect to the inquiry aforementioned above. The Office of Grievances(hereafter OOG) at PVSP, revealed that DEFENDANT D. MAY had stated that he could not recall whether or not witnesses were requested by the PLAINTIFF. With blatantly and stark misstatement of the facts submitted by the PLAINTIFF in his 602, the OOG at PVSP denied his request for relief.(see Ex.3.2.3-4, cf. Ex.3.2.1-2, sec. A., explanation of issue)

29.    PLAINTIFF hereby alleges that the confidential inquiry into the allegations of false reports being submitted by DEFENDANT S. WISWELL, R. BLANCAS, and M. REYES, was carried out and conducted in a manner inconsistent with the purpose for which it is actually intended under the controlling authority(15 CCR) by DEFENDANT LT. MARTIN who was in charge of the inquiry. PLAINTIFF alleges that not only was he wrongfully found guilty based upon falsified and fabricated accounts, but that any request for relief failed to uncover the evident wrongdoing and falsification of reports by the aforementioned DEFENDANTS. PLAINTIFF further alleges, that DEFENDANT LT. MARTIN did in fact wilfully ignore information provided during the inquiry process, furnished by eye witnesses to the events at issue taking place on 04/28/2021, that supported the PLAINTIFF"S version of events, and that supported his allegations of staff misconduct on the part of the three DEFENDANTS present at the time of the incident, and their fabricated accounts submitted.

30.    PLAINTIFF further alleges, that DEFENDANTS D. MAY, LT. MARTIN, and M. MARTIN had adequate facts and documentation within their possession to 1) Enter an alternate finding, 2) Order a rehearing of the charge, 3) Find in favor of the PLAINTIFF on the basis of the accounts submitted by DEFENDANTS were unethical and fabricated, 4) Enter alternative findings consistent with those set forth in 15 CCR§3312(b)(1)-(2). These particular DEFENDANTS, in concert, relied on information that they knew, or

9

1  or should have known, was false in nature, and that did not comport with the

2  findings of medical personnel, an unethical violation of CDCR policy and procedure.

3  (see 15 CCR§3286) Such reliance denied PLAINTIFF both a fair disciplinary hearing,

4  and contaminated the confidential inquiry into meritorious claims of staff misconduct

5  as the result of the fabricated accounts mentioned throughout this complaint. These

6  reports have been detrimental to PLAINTIFF'S legal standing before the BPH, and

7  PLAINTIFF further alleges that reliance on these accounts has denied him protections

8  under the law pertaining to ethical standards, Due Process and Equal Protection.

9  (15 CCR §§3270, 3286, 3391(a),3413(a)(6)(A),(c))

10  31.   PLAINTIFF further alleges that DEFENDANT M. MARTIN has essentially refused to

11  grant fair consideration to the evidence relied upon as the Chief Disciplinary

12  Officer who ratifies the findings of his subordinates. PLAINTIFF at some point opted

13  to contact the CDCR Office of Internal Affairs(hereafter OIA). In a very candid and

14  detailed letter, PLAINTIFF explained exactly what his issues were, and exactly what

15  took place.(see Ex.#5.1.1-4) In response, the OIA took no action, but they instead

16  chose to send the PLAINTIFF"S letter directly back to DEFENDANT M. MARTIN, who then

17  issued the response attatched as Ex.#5.2.1. As evidenced by the letter authored in

18  response to the letter to OIA authored by the PLAINTIFF, DEFENDANT M. MARTIN is

19  entirely unwilling to accept or consider that the accounts proffered by the named

20  DEFENDANTS were substantially contradictory in terms of events witnessed, as well

21  as completely unsupported by medical personnel's findings and observations pertaining

22  to injuries found on either PLAINTIFF or Mills.

23  · Summary of Allegations ·

24  32.   PLAINTIFF hereby alleges that DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES

25  submitted inaccurate and fabricated accounts, conspired and collaborated to arrive

26  at a version of events with the intent to provide their superiors a false account of

27  what took place, and that their reports served to justify a use of force that was not

28  necessary, and to further provide a semblance to their superiors of diligence and

and dutiful supervision that were in fact non existent during the events described throughout this complaint. Such submissions in turn fostered a reliance on false accounts that resulted in a miscarriage of justice in connection with the finding of guilt arrived at. The fabricated accounts, in tandem with DEFENDANT D. MAY'S denial of witnesses on the PLAINTIFF'S behalf, effectively denied the PLAINTIFF'S rights to Due Process of law during the disciplinary hearing, under both state and federal authorities, as well as administrative regulations contained with the 15 CCR applicable sections.

33.    Upon information and belief, DEFENDANT D. MAY, partially, and intentionally denied the PLAINTIFF the four witnesses requested during the adjudication hearing of RVR log no.#7083306, and moreover, DEFENDANT D. MAY intentionally ignored the readily apparent inconsistencies in the reports submitted by DEFENDANTS(¶32) insofar as such pertained to the recorded observations of medical personnel(see 7219 forms, Ex.#1.1-2), that not only called into question the integrity of the reports used to support the finding of guilt, but also displayed no degree of injury consistent with the reports submitted. DEFENDANT D. MAY intentionally, with ill will and/or malice, applied factors in support of a guilt finding that were obviously false in nature, and did not support a finding of guilt resulting from a preponderance of the evidence as required by statutory    authority, as well as administrative regulations governing the adjudication of disciplinary accusations in the State of California in any institutional/prison setting.

34.    PLAINTIFF further alleges that Due Process and Equal Protections have been denied him throughout both the confidential inquiry process, as well as throughout the subsequent review of the finding of guilt by DEFENDANTS M. MARTIN, and by DEFENDANT LT. MARTIN(PLAINTIFF is uncertain of familial relation at this time of the identically surnamed DEFENDANTS). Both processes aforementioned were carried out in such manner as to provide complete and unfettered support of their colleagues whom either submitted a report and/or supplementary account of the events, or that

ratified the findings of DEFENDANT D. MAY, being completely aware of the PLAINTIFF'S grievance pertaining to the denial of witnesses during the proceedings mentioned throughout this complaint.

35.   PLAINTIFF further alleges that actual injuries and damages have been inflicted upon him giving rise to an actual controversy involving the parties rights, duties, and obligations under both state and federal law, and that for which he has no adequate remedy at law. PLAINTIFF respectfully contends that absent the intervention of this court, the status quo regarding the prejudicial information being maintained in his central file, will continue to inflict injury and/or damages upon the PLAINTIFF owing to the culture and customs that exist within the department maintaining legal custody of the PLAINTIFF.

<u>· Verification ·</u>

36.   I Jonathon J. Kohut, PLAINTIFF in the entitled action, am the true author of the factual allegations set forth in this complaint, and have composed such from my own first hand personal recollection(s).

37.   I Jonathon J. Kohut, PLAINTIFF in the entitled action, have personally compiled the documentary exhibits/declaration submitted by volume, which are cited throughout this complaint, and are incorporated by reference.

38.   That for purposes of any motion filed under Rule 56, Fed.R.Civ.P., this action contains deliberate indifference allegations involving state of mind questions appropriately decided by juries, and that this paragraph serves as a running objection to any motion/cross motion for summary judgement submitted during the course of this litigation.

Under the penalty of perjury, pursuant to 28 U.S.C.§1746, and the laws of the State of California, I hereby declare the foregoing is true and correct, and any portion set forth upon information and belief is/are true to the best of my knowledge, believed to be true, and has/have been submitted in the utmost of good

12

faith.

X ~~~~~~~~~~~~~~~~~~~    Dated: 8/27/2023

Jonathon J. Kohut,
Plaintiff,
In Pro Se.

• CLAIMS FOR RELIEF •

CLAIM ONE

(42 U.S.C. §1983/14th Amendment, U.S. Const./Due Process Violations)

39.    PLAINTIFF realleges the allegations of ¶¶1-38, incorporated as if fully set forth herein.

40.    DEFENDANTS M. MARTIN, LT. MARTIN, and D. MAY, during all times relevant, were acting under the color of state law, and within the scope and course of their employment as agents/officials of CDCR.

41.    Under the Due Process clause of the 14th Amendment to the U.S. Constitution, PLAINTIFF had a fundamental right to summon witnesses on his behalf during the disciplinary hearing held on 05/21/2022, to present evidence, to have an impartial decision maker preside over the proceedings, and to have a decision rendered based on a preponderance of the evidence submitted in connection with the proceedings.

42.    DEFENDANTS M. MARTIN, LT. MARTIN and D. MAY, knew, or should have known, that PLAINTIFF'S rights as set forth above(¶41), were a procedural requirement under the 14th Amendment, as well as statutory authorities, and administrative regulations contained within the 15 CCR.

43.    DEFENDANTS at all times relevant, acted in concert while collaborating as colleagues and despite repeated attempts by the PLAINTIFF to obtain relief through the 602 process, these DEFENDANTS repeatedly upheld the finding of guilt entered by DEFENDANT D. MAY, and they did so in violation of PLAINTIFF'S right to due process under the 14th Amendment of the U.S. Constitution.

13

44.    DEFENDANTS actions and/or courses of conduct were objectively unreasonable, and these DEFENDANTS knew, or should have known that their actions and inactions, created an unreasonable and significant risk of forseeable and serious injury to the PLAINTIFF'S legal standing before the BPH, and thereby have exhibited deliberate indifference to PLAINTIFF'S rights under the 14th Amendment of the U.S. Constitution and the due process clause.

45.    These DEFENDANTS actions and inactions were willful, intentional, malicious, wanton, and dispicable in conscious disregard of the rights of the PLAINTIFF'S rights thereby entitling PLAINTIFF to exemplary and/or punitive damages.

CLAIM TWO
(Article I, section 7, Calif. Const./Due Process Violations)

46.    PLAINTIFF realleges the allegations of ¶¶1-45, incorporated as if fully set forth herein.

47.    In failing to summon PLAINTIFF'S requested witnesses during the proceedings mentioned above, DEFENDANT D. MAY violated PLAINTIFF'S right to due process under Artticle I, §7 of the California Constitution.

48.    DEFENDANTS M. MARTIN, and LT. MARTIN, upon being presented with PLAINTIFF'S requests for relief pertaining to the failure of DEFENDANT D. MAY to afford PLAINTIFF witnesses during the hearing mentioned above, and the false and fabricated accounts submitted by DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES, failed to take remedial actions at their disposal, and insodoing, effectively violated PLAINTIFF'S right to due process, and truth in proceedings.

49. PLAINTIFF'S injuries and violations of his constitutional rights were directly and proximately caused by the actions and inactions, conduct, and attitudes of these three DEFENDANTS, which were and are the moving force of the violations.

50.    As a result, PLAINTIFF seeks declaratory relief against all DEFENDANTS to

14

1  declare their having violated Article I, sections 7, and 28 of the California

2  Constitution.

### CLAIM THREE
(California Civil Code §52.1/Violations of The Bane Act)

51.   PLAINTIFF realleges the allegations of ¶¶1-50, incorporated as if fully set forth herein.

52.   By their actions described above, DEFENDANTS acting in concert and/or conspiracy, with threat, intimidation, and/or coercion, violated the PLAINTIFF'S rights under Cal.Civ.Code §52.1, The Bane Act, by interfering with the PLAINTIFF'S rightful exercise or enjoyment of PLAINTIFF'S clearly established rights secured by the Constitutions and laws of the United States, and the State of California. The DEFENDANTS' actions have caused actual damages within the meaning of Cal.Civ.Code §§52, and 52.1.

53.   PLAINTIFF'S injuries and the violations of his constitutional rights were directly and proximately caused by the unofficial practices and policies of the DEFENDANTS, which were and are the moving force of the violations.

54.   As a direct and proximate result of the conduct of the DEFENDANTS, PLAINTIFF is entitled to an award of exemplary damages,civil penalties, attorney's fees, and paralegal fees as provided by Cal.Civ.Code §§52, and 52.1.

### CLAIM FOUR
(Tort of Abuse of Process)

55.   PLAINTIFF realleges the allegations of ¶¶1-54, incorporated as if fully set forth herein.

56.   PLAINTIFF hereby alleges that DEFENDANTS have utilized the RVR process in violation of California Constitution, Article I, section 28(f)(2), PC§2932, 15 CCR §§3286, 3005(d)(1), respectively by their submission of false reports, the failure

to summon PLAINTIFF'S requested witnesses on his behalf, the failure to provide the

PLAINTIFF with an impartial decision maker during adjudicatory proceedings, the

failure to reach a decision by preponderance of the evidence, and the repeated denial

of administrative relief subsequent to a finding of guilt being entered in violation

of established authorities governing disciplinary hearings in CDCR when liberty

interests are potentially affected and/or in jeopardy.

57.    Each DEFENDANT in this action acted in a manner that was ulteriorly motivated

and wholly unrelated to the lawful purpose for which the RVR process has been

implemented within the institutions comprising the CDCR, and its legally intended

usage pursuant to PC§§2932, and 5054, 5058 et seq, and thereby injuring PLAINTIFF.

PLAINTIFF hereby alleges that DEFENDANTS, having been duly sworn as peace officers

of the State of California, in carrying out the courses of conduct described

throughout this complaint, have acted with ill will, malice, and have intentionally

fabricated material facts relied upon during proceedings in adjudication, and have

moreover, exhibited deliberate indifference towards the rights of the PLAINTIFF,

and with reckless disregard for his guaranteed rights under constitutional

provisions, as well as statutory authority, and finally administrative regulations.

58.    PLAINTIFF futher claims that DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES,

authored fabricated reports in connection with the RVR and hearing in adjudication

mentioned throughout this complaint, to the injury and detriment of the PLAINTIFF,

and that these DEFENDANTS did so knowingly, and fully aware of the risk of harm to

the PLAINTIFF, and with conscious disregard to PLAINTIFF'S rights, and the lawful

purpose for which the procedure has been sanctioned under California law.

59.    DEFENDANTS M. MARTIN, LT. MARTIN, and D. MAY, notwithstanding numerous

evidentiary factors weighing in PLAINTIFF'S favor, denied PLAINTIFF a fair hearing

by failing to summon requested witnesses, failed to act upon inconsistent and false

reports submitted by DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES, and further

1   refused to take remedial actions/measures subsequent to PLAINTIFF'S submission of

2   no fewer than four 602's seeking administrative relief to which he was rightfully,

3   and legally entitled.

4   60.   Each DEFENDANT had departmental duties imposed under the CDCR Department

5   Operations Manual(DOM §§33030.3.1,2 & 3), regarding the performance of their job

6   description(s), and their flagrant and intentional disregard of such obligations

7   contributed to their state of mind, and their willingness to inflict the tort of

8   abuse of process upon the PLAINTIFF.

9   61.   DEFENDANTS' conduct, actions, omissions, attitudes, and conscious disregard

10  to the injury and damage inflicted upon the PLAINTIFF were carried out intentionally

11  with ill will, malice, and with deliberate indifference to the rights of the

12  PLAINTIFF, thereby justifying an award of exemplary and/or punitive damages.

13

14                              CLAIM FIVE

15                          (Tort of Conspiracy)

16  62.   PLAINTIFF realleges the allegations of ¶¶1-61, incorporated as if fset forth

17  fully herein.

18  63.   DEFENDANTS S. WISWELL, R. BLANCAS, and M. REYES intentionally, with malice,

19  and with conscious disregard for the rights of the PLAINTIFF, proceeded on 04/28/

20  2021 to submit fabricated reports, false in nature and character, in agreement and

21  in collaboration, directed to their superiors, that attributed to the PLAINTIFF his

22  willful and intentional participation in an altercation, physically violent in

23  nature, and resulted in his being charged with 'fighting', in violation of 15 CCR §

24  3005(d)(1).

25  64.   DEFENDANTS' agreement was carried out to the detriment of the PLAINTIFF, for

26  unethical purposes that were consistent with reporting a non factual scenario that

27  displayed dutiful vigilance in their job performance to their superior officials.

28

65.   DEFENDANTS M. MARTIN, LT. MARTIN, and D. MAY, furthered the conspiracy, while lending aid and encouragement to and/or ratifying the acts of their subordinate officials/colleagues set forth above by violating PLAINTIFF'S right to summon witnesses on his behalf during the hearing mentioned throughout this complaint, by ignoring glaring inconsistencies contained within DEFENDANTS' narratives of the incident and the lack of injuries sustained by either individual, and by their repeated denials of administrative relief sought including, but not limited to; affording PLAINTIFF a new hearing to allow witnesses requested, dismissal of the charge, a finding that DEFENDANTS had in fact submitted falsified reports in violation of CDCR policy, or any other form of relief that would undo the miscarriage of justice suffered by the PLAINTIFF and the injuries suffered as a direct and proximate result of the DEFENDANTS' actions, inactions, omissions, and courses of conduct.

66.   DEFENDANTS, as a result of their courses of conduct, have inflicted general damages upon the PLAINTIFF, and have acted with malice, ill will, and oppresion within the meaning of Cal.Civ.Code §3294, in conscious disregard for the rights of the PLAINTIFF, thereby entitling PLAINTIFF to an award of exemplary and/or punitive damages.

CLAIM SIX
(Tort of Negligence)

67.   PLAINTIFF realleges the allegations of ¶¶1-66, incorporated as if fully set forth herein.

68.   DEFENDANTS have, and had a duty as peace officers of the State of California being duly sworn, to perform their occupational functions in an ethical manner in accordance with statutory authorities, administrative regulations, and even CDCR policies. With their employment/agency comes an inherent duty to report incidents in accordance with Article I, section 28(f)(2), the 'Truth-In-Evidence' clause of

18

the California Constitution, as well as 15 CCR §3286, and the lawful conduct that is becoming of a sworn peace officer in the State of California.

69.    DEFENDANTS had a duty of care, owed the PLAINTIFF, to abide by the 15 CCR, DOM, PVSP-OP Manual, and the 'Truth-In-Evidence' clause of the California Constitution, in conjuction with the Penal Code, as well as the Government Code that function alongside the aforementioned authorities.

70.    Each DEFENDANT named in this complaint, has breached their duty of care owed the PLAINTIFF pursuant to Cal.Evid.Code §669, rendering negligence presumed, and that such breaches have inflicted injuries and damages upon the PLAINTIFF that have directly and proximately been caused by DEFENDANTS' acts and omissions.

71.    The injuries and damages suffered by the PLAINTIFF were forseeable in nature and but for the negligence of the DEFENDANTS, PLAINTIFF would not have been injured.

72.    DEFENDANTS conduct was objectively unreasonable, and was carried out with ill will, malice, intentionally, and with reckless disregard for the rights of the PLAINTIFF thereby entitling the PLAINTIFF to an award of exemplary and/or punitive damages.

CLAIM SEVEN
(Tort of Intentional Infliction of Emotional Distress)

73.    PLAINTIFF realleges the allegations of ¶¶1-72, incorporated as if set forth fully herein.

74.    DEFENDANTS are/were during all times relevant, CDCR officials, a state agency pursuant to the law of the State of California, and duly sworn peace officers of California. By virtue of such employment/agency, comes authority and/or privelege with corresponding wielding of processes associated with, and consistent with such duty and performance in their respective capacities. In short, these DEFENDANTS have the vested ability and authority to charge, impose, attach, adjudicate, review, amend, uphold, and/or vacate findings consistent with the lawful disciplinary

1  sanctioning of those individuals within the CDCR that have been charged with any

2  administrative or serious rule violation while in the custody of the CDCR.

3  75.    Disciplinary sanctions imposed by any finding of guilt in connection with

4  the RVR process within the CDCR, implicate liberty interests demanding certain

5  due process protections, and also bring collateral consequences aside from loss

6  of good time credits and/or priveleges, and statutory authorities and adminstrative

7  regulations govern alongside of constitutional provisions such procedures that serve

8  to adjudicate such RVR's.

9  76.    Since the incident, and the subsequent events described throughout this

10  complaint, PLAINTIFF has been in a constant state of emotional distress owing to

11  what he considers to be unethical, conspiratorial, dishonest, and oppressive conduct

12  that has been carried out by DEFENDANTS. PLAINTIFF further alleges, that their

13  conduct was and is outrageous, egregious, and per se constitutes an abuse of their

14  vested discretion that comes with their agency/employment as CDCR officials.

15  77.    DEFENDANTS' conduct was intentional, and was carried out with the sole aim

16  and purpose of causing anguish and/of humiliation to the PLAINTIFF, and has been the

17  topic of focus in many of the meetings with his clinician that he sees regularly as

18  a treatment regimen in the CCCMS(mental health services)program within the CDCR.

19  78.    PLAINTIFF'S distress has been, and still is severe in nature and scope, and

20  comes as the direct and proximate result of reaching the realization that those who

21  have custody of him have the capacity, ability, and even the willingness to enter

22  wrongful and unethical findings in his c-file, and that the 602 grievance process

23  serves no purpose for those with meritorious claims seeking relief. PLAINTIFF'S

24  distress has been exacerbated by the ostensible and unethical courses of conduct

25  carried out by the DEFENDANTS, and their vehement defense of blatanly flagrant

26  violations of CDCR policy(ies) pertaining to RVR reporting, the adjudication of such,

27  and the continuous failure to provide relief and/or accountability in the face of

28  starkly obvious deriliction(s) of duty, and unethically substandard performance of

1   duties of both rank and file officials, as well as administrative level officials

2   employed by the CDCR, i.e. DEFENDANTS.

3   79:   PLAINTIFF'S distress has been further exacerbated by the very real fact that

4   the information now contained within his c-file, which shall be reviewed by the BPH

5   during future suitability hearings, is of a nature and character that not only has

6   depicted the PLAINTIFF as being somewhat of an aggressor, but that also depicts him

7   as having repeatedly disobeyed staff directives during the incident. Throughout the

8   incident, not only was the PLAINTIFF reacting in a state of severe duress after

9   having been attacked, but that the other individual was attempting to regain his

10   footing after having been knocked down. These key details were either ignored by

11   DEFENDANTS, and/or disregarded for not comporting with the narrative they had arrived

12   at. This miscarriage of justice has maintained PLAINTIFF'S state of emotional

13   distress since the hearing on 05/21/2021, and the erroneous sanction being imposed.

14   80.   DEFENDANTS have acted wilfully, intentionally, with malice, and in dispicable

15   and conscious disregard for the rights of the PLAINTIFF, within the meaning of

16   Cal.Civ.Code §3294, and have thereby entitled PLAINTIFF to an award of exemplary

17   and/or punitive damages.

18

19               · REQUEST FOR RELIEF ·

20     WHEREFORE, PLAINTIFF prays that the court:

21     1) Declare the DEFENDANTS' policies and practices described throughout this

22   complaint, have violated PLAINTIFF'S rights under the 14th Amendment of the U.S.

23   Constitution, Article I, §7 of the California Constitution, California Civil Code
      §52.1, and constitute the torts of abuse of process, conspiracy, negligence, and

24   intentional infliction of emotional distress under California state law.

25     2) Issue a mandate/directive to CDCR, to implement Due Process procedural

26   safeguards in the form of a witness request/denial form being required any time any
      accused individual is issued an RVR 115(serious) write up that has the inherent

27   potential to adversely affect the liberty interests of the accused, thereby requirng

28   due process protections.

3) Nominal damages for the violations of the PLAINTIFF'S rights.

4) Compensatory damages in an amount to be proven at trial.

5) Punitive/Exemplary damages against each DEFENDANT in an amount to be proven at trial.

6) Costs, including filing fees, copying charges, mailing costs, and those costs and expenses authorized under 42 U.S.C. §1988, Cal.Civ.Code §52.1, and Cal. Code of Civil Procedure §1021.5.

7) Any other relief this court deems just and equitable.


Respectfully Submitted,


X _____        Dated: 8/27/2023

Jonathon J. Kohut,
Plaintiff,
In Pro Se.


J.J. Kohut #AN1162
ASP/410-18-5L
P.O. Box 904
Avenal, Ca. 93204-0904

22

## -EXHIBIT #1-

- · 7219 Medical Evaluation/Injury Report-Kohut    # 1.1

- · 7219 Medical Evaluation/Injury Report-Mills    # 1.2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

JONATHON KOHUT                          Case No.1:22-cv-00472-HBK(PC)

vs.

M. MARTIN, et al.              VOLUME OF EXHIBITS/DECLARATION
                               IN SUPPORT THEREOF(Rule 10(c), Fed.R.Civ.P.)
_____/


· Volume of Exhibits/Declarations In Support Thereof ·


Document Description                                    Exhibit #

· CDCR 7219 Medical Evaluation Forms(2 pgs)            1.1-2

· RVR log no.7083306(4 pgs)                            2.1.1-4

· Incident Report Narratives(3 pgs)                    2.2.1-3

· Hearing Results(9 pgs)                               2.3.1-9

· 602 log no.114099( 6 pgs)                            3.1.1-6

· 602 log no.123815(8 pgs)                             3.2.1-8

· Government Claim No.21005089(2 pgs)                  4.1-2

· Letter to CDCR OIA(Internal Affairs)(4 pgs)          5.1.1-4

· Response Letter/AW & CDO M. Martin(1 pg)             5.2.1

· Response Letter/CDCR Ombudsman(1 pg)                 6.1

· Declaration of Plaintiff(11 pgs)                     Appendix A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATIO

**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/18)

Page 1 of

| NAME OF INSTITUTION | LOCATION OF EVALUATION | | DATE |
|---|---|---|---|
| PVSP | Delta Gym | i | 04-28-21 |

REASON FOR REPORT ☐ ALLEGATION ☐ ON THE JOB INJURY ☐ USE OF FORCE ☐ INJURY ☐ OTM RETURNS
☑ UNUSUAL OCCURRENCE ☐ PRE AD/SEG ADMISSION ☐ R&R ☐ OTHER

| NAME  LAST  FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|
| Kolwit, Jonathan | AN1162 | | |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | TIME SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| Delta 1 | 04-28-21 | @ 2046 | @2050 | | |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

" "No Comment"

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 (no) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 (yes) |
| Swollen Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 (yes) |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
| | 18 |

Chemical Agent Exposure? YES / NO

Chem. Agent Exposure Area  EX

Decontaminated w/ Water? YES / NO / REFUSED

Decontaminated w/ Air? YES /NO / REFUSED

Self-decontamination Instructions given ?  YES / NO

Staff issued Exposure packet ?  YES / NO

Q 15 min. check times

| Initial | 1st Check |
|---|---|
| 2nd Check | Final |

TIME/DISPOSITION  RTC @ 2103

REPORT COMPLETED BY/TITLE (PRINT AND SIGN)  M. Sandoval  RN    M. Shel  RN

| PERNR / INST. ID # | RDOs | ASSIGNMENT AREA |
|---|---|---|
| 821491 / 1961529 | S/S | 2W Float |

Right   EX.   Left

Front   Back   R

14

14   9   14

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of

| NAME OF INSTITUTION | LOCATION OF EVALUATION | DATE |
|---|---|---|
| PUSP | Delta Program | 4-28-21 |

REASON FOR REPORT ☐ ALLEGATION  ☐ ON THE JOB INJURY  ☑ USE OF FORCE  ☐ INJURY  ☐ OTM RETURNS
☑ UNUSUAL OCCURRENCE  ☐ PRE AD/SEG ADMISSION  ☐ R&R  ☐ OTHER

| NAME LAST | FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|---|
| Mills | J | BH8082 | N/a | N/a |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | TIME SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| Delta 1 | 4-28-21 | 2046 | 2055 | N/a | N/a |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"NO comment"

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | (4) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| Swollen Area | (10) |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
|  | 18 |

Chemical Agent Exposure?  YES / (NO)
Chem. Agent Exposure Area  EX
Decontaminated w/ Water?  YES / (NO) / REFUSED
Decontaminated w/ Air?  YES / (NO) / REFUSED
Self-decontamination Instructions given ?  YES / (NO)
Staff issued Exposure packet ?  YES / (NO)

Q 15 min. check times

| Initial | N/a | 1ˢᵗ Check | N/a |
|---|---|---|---|
| 2ⁿᵈ Check | N/a | Final | N/a |

TIME/DISPOSITION
returned to custody



Right   Left

#4
#10

Front   Back

#4
#10

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | PERNR / INST. ID # | RDOs | ASSIGNMENT AREA |
|---|---|---|---|
| M Shop LVN   M Shop | 80522 | S/sun | Medical |
|  | 1961Y237 |  |  |

<u>-EXHIBIT #2-</u>

- Rules Violation Report Log No.#7083306      2.1.1-4
- Incident Report Narratives      2.2.1-3
- Hearing Results      2.3.1-9

CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**

# RULES VIOLATION REPORT

| CDC NUMBER AN1162 | INMATE'S NAME KOHUT, JONATHAN J. | MEPD 04/28/2041 | FACILITY PVSP-Facility D | HOUSING LOCATION PVSP-D - D 001 2 - 226001U |
|---|---|---|---|---|
| VIOLATION DATE 04/28/2021 | VIOLATION TIME 20:46:00 | VIOLATION LOCATION PVSP-Facility D - DAYROOM | | WITH STG NEXUS No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Wednesday April 28, 2021, at approximately 2046 hours, while performing my duties as Delta Facility Building One Floor Officer #1, I was monitoring the evening dayroom activities when I observed two (2) Inmates later identified by their state Issued Identification Cards (I.D.) cards as Mills, BH 8082 (DFB1-134L) and Kohut, AN 1162 (DFB1-226U) striking each other in the upper torso and facial area with their fists in front of the stairs in C-section of the dayroom. Delta Facility Building 1 Floor Officer #2, R. Blancas activated his Personal Alarm Device (P.A.D.) and notified Central Control of a Code 1 in building 1. Control Booth Officer M. Reyes ordered all inmates to "Get Down" over the Public Address System (P.A.S.). All inmates complied with the orders to "get down" with the exception of the combatants. Mills and Kohut continued to strike each other in the upper torso and facial area with their fists. Officer Blancas and I formed a skirmish line in front of the Officers Podium facing A Section of the dayroom and gave additional orders to "Get Down" with negative results. Mills and Kohut continued to strike each other in the upper torso and facial area with their fists. I observed Mills loose his balance and fall to ground, landing on his back. Mills covered his upper torso area with his arms and hands attempting to defend himself. I gave additional orders to "Get Down" with negative results, I observed Kohut lean forward in an attempt to strike Mills while he lay on the ground. Fearing Serious Bodily Injury or Great Bodily Injury Mills would suffer from Kohut's attack, I utilized my State Issued MK-9 Oleoresin Capsicum (O.C.) spray, administering one (1) 2 second burst from approximately 6 feet away striking the facial area of Kohut. The use of force had the desired effect, gaining compliance, Kohut ceased his attack, separated and assumed a prone position away from Mills. Responding staff arrived and joined the already established skirmish line and placed the combatants into handcuffs and performed clothed body searches with negative results for contraband. Both Inmates were then escorted out of the building for Medical Evaluations. This concludes my involvement in this incident.

PERN: 92082

| REPORTING EMPLOYEE S. Wiswell | TITLE C/O | ASSIGNMENT DFB1 Floor #1 | RDO S/M | DATE: 04/29/2021 |
|---|---|---|---|---|

| RVR LOG NUMBER: 000000007083306 | VIOLATED RULE NUMBER: 3005(d)(1) |
|---|---|
| SPECIFIC ACT: Fighting | |

CLASSIFICATION

| | | |
|---|---|---|
| LEVEL:  Serious | | OFFENSE DIVISION:  Division D |
| REFERRED TO:  Senior Hearing Officer | | FELONY PROSECUTION LIKELY:  No |

| REVIEWING SUPERVISOR
F. Nevarez | TITLE
SGT (A) | DATE
04/29/2021 |
|---|---|---|

| CLASSIFIED BY
E. Sanders | TITLE
CAPTAIN (A) | DATE
04/30/2021 |
|---|---|---|

CDCR SOMS ISST120 · RULES VIOLATION REPORT

CDC NUMBER: AN1162 NAME: KOHUT, JONATHAN J. LOG#: 000000007083306          Page 2 of 4



**CALIFORNIA DEPARTMENT** *of*
**Corrections and Rehabilitation**

# RULES VIOLATION REPORT

| CDC NUMBER AN1162 | INMATE'S NAME KOHUT, JONATHAN J. | MEPD 04/28/2041 | FACILITY PVSP-Facility D | HOUSING LOCATION PVSP-D - D 001 2 - 226001U |
|---|---|---|---|---|
| VIOLATION DATE 04/28/2021 | VIOLATION TIME 20:46:00 | VIOLATION LOCATION PVSP-Facility D - DAYROOM | | |

| INMATE NOTIFICATION |
|---|

POSTPONEMENT OF DISCIPLINARY HEARING

| □ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE SIGNATURE *N/A* | DATE 4/30/21 |
|---|---|---|
| □ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE SIGNATURE *N/A* | DATE 4/30/21 |
| □ I REVOKE my request for postponement. | INMATE SIGNATURE *N/A* | DATE 4/30/21 |

STAFF ASSISTANT

| □ REQUESTED    ☒ WAIVED BY INMATE | INMATE SIGNATURE *N/A* | DATE 4/30/21 |
|---|---|---|

INVESTIGATIVE EMPLOYEE

| □ REQUESTED    ☒ WAIVED BY INMATE | INMATE SIGNATURE *N/A* | DATE 4/30/21 |
|---|---|---|

## SUMMARY OF DISCIPLINARY PROCEDURES AND INMATE RIGHTS
### See California Code of Regulations, Title 15 (CCR) for details

**A.    TIME CONSTRAINTS -**

1.    A classified copy of the Rules Violation Report and any additional/supplemental information containing any elements of the violation charged shall normally be provided to the inmate within 15 days from the date the information leading to the charges is discovered by staff.

2.    The charges shall be heard within 30 days from the date the inmate is provided a classified copy of the Rules Violation Report unless the charges were referred for possible prosecution and the inmate has been granted a request for postponement of the disciplinary proceedings pending the outcome of the referral, if exceptional circumstances exist pursuant to CCR Section 3000, or the inmate is transferred out of the custody of the department. Postponement shall not bar any credit forfeiture.

3.    REFERRAL FOR PROSECUTION - **(Serious Rules Violations Only)** - Referrals for prosecution will not delay a disciplinary hearing unless you submit a request in writing for postponement of the hearing pending the outcome of such referral. You may revoke such request in writing at any time prior to the filing of accusatory pleadings by the prosecuting authority. A disciplinary hearing will be held within 30 days of staff receiving your written revocation of your request to postpone the hearing or within 30 days of receiving a response from the prosecuting authority. (CCR Section 3316-3320)

4.    Failure to meet the time constraints outlined in CCR Section 3320 shall preclude forfeiture of credits.

**B.    INVESTIGATIVE EMPLOYEE/STAFF ASSISTANCE -**

1.    General Information - You may request to have an Investigative Employee to assist in the investigation and/or a Staff Assistant assigned, to assist in the preparation, or presentation of the disciplinary hearing. Staff shall evaluate your request along with the criteria outlined in CCR Section 3315 (d)(1) and CCR Section 3315(d)(2) and determine if an Investigative Employee and/or Staff Assistant shall be assigned.

2.    Staff Assistant - If assigned, the Staff Assistant will inform inmates of their rights and of the disciplinary hearing procedures, advise and assist in the inmate's preparation for a disciplinary hearing, represent the inmate's position at the hearing, ensure that the inmate's position is understood, and that the inmate understands the decisions reached. (CCR Section 3318)

3.    Investigative Employee - **(Serious Rules Violations Only)** - If assigned, will gather information, question staff and inmates, screen witnesses, and complete and submit a written, non-confidential report to the disciplinary hearing officer. You have the right to receive a copy of the investigative employee's report 24 hours before a hearing is held. (CCR Section 3318)

4.    Witnesses - **(Serious Rules Violations Only)** - You may request the presence of witnesses at the hearing who can present facts related to the charges against you. You may also request the presence of the reporting employee and the investigative employee. You may, under the direction of the hearing officer, questions any witness present at the hearing. The hearing officer may deny the presence of witnesses when specific reasons exist. (CCR Section 3315)

5.    Personal Appearance - A hearing of the charges will not normally be held without your presence, unless you refuse to attend. (CCR Section 3320)

**C.    DISPOSITION** - At the end of the hearing, you will be advised of the findings and disposition of the charge. Within five working days, following review of the Rules Violation Report by the Chief Disciplinary Officer, you will be given a copy of the completed rule violation report, which will contain a statement of the findings and disposition and the evidence relied upon to support the conclusions reached. (CCR Section 3320)

**D.    APPEAL** - If you are dissatisfied with the process, findings or disposition, you may submit an inmate appeal within 30 days following receipt of the finalized copy of the Rules Violation Report and any other pertinent documentation (CCR Section 3084)

CDCR                              **INCIDENT REPORT PACKAGE**                    **PAGE:** 18
**REPORT NO. IRTR161 - 12**                                                       **PROCESSED:** 05/07/2021 15:03
                        **INCIDENT LOG NUMBER: 000000000021670**                   **REQUESTOR:** E. Sanders

---

### STAFF NARRATIVE

| | |
|---|---|
| **STAFF NAME:** Wiswell, S▓▓▓▓ | **NARRATIVE TYPE:** Initial Report |
| **CREATED DATE:** 04/28/2021 | **CREATED TIME:** 23:18:06 |

#### NARRATIVE

On Wednesday April 28, 2021, at approximately 2046 hours, while performing my duties as Delta Facility Building One Floor Officer #1, I was monitoring the evening dayroom activities when I observed two (2) inmates later identified by their state Issued Identification Cards (I.D.) cards as Mills, BH 8082 (DFB1-134L) and Kohut, AN1162 (DFB1-226U) striking each other in the upper torso and facial area with their fists in front of the stairs in C-section of the dayroom. Delta Facility Building 1 Floor Officer #2, R. Blancas activated his Personal Alarm Device (P.A.D.) and notified Central Control of a Code 1 in building 1. Control Booth Officer M. Reyes ordered all inmates to "Get Down" over the Public Address System (P.A.S.). All inmates complied with the orders to "get down" with the exception of the combatants. Mills and Kohut continued to strike each other in the upper torso and facial area with their fists. Officer Blancas and I formed a skirmish line in front of the Officers Podium facing A Section of the dayroom and gave additional orders to "Get Down" with negative results. Mills and Kohut continued to strike each other in the upper torso and facial area with their fists, I observed Mills loose his balance and fall to ground, landing on his back. Mills covered his upper torso area with his arms and hands attempting to defend himself. I gave additional orders to "Get Down" with negative results, I observed Kohut lean forward in an attempt to strike Mills while he lay on the ground. Fearing Serious Bodily Injury or Great Bodily Injury Mills would suffer from Kohut's attack, I utilized my State Issued MK-9 Oleoresin Capsicum (O.C.) spray, administering one (1) 2 second burst from approximately 6 feet away striking the facial area of Kohut. The use of force had the desired effect, gaining compliance, Kohut ceased his attack, separated and assumed a prone position away from Mills. Responding staff arrived and joined the already established skirmish line and placed the combatants into handcuffs and performed clothed body searches with negative results for contraband. Both inmates were then escorted out of the building for Medical Evaluations. This concludes my involvement in this incident.

S. Wiswell                                                            **DATE:** 04/28/2021
STAFF SIGNATURE

               **BADGE #:** 84773                           **PERNR:** ▓▓▓

**NARRATIVE REVIEWED:** Yes                      **REVIEWED BY STAFF:** Nevarez, F▓▓▓
      **REVIEWED DATE:** 04/28/2021                    **REVIEWED TIME:** 23:21:55

---

| | |
|---|---|
| **STAFF NAME:** Wiswell, S▓▓▓▓ | **NARRATIVE TYPE:** Supplemental Report |
| **CREATED DATE:** 04/29/2021 | **CREATED TIME:** 16:59:06 |

#### NARRATIVE

Question #1:
In your report you indicate you utilized OC Pepper Spray on inmate Kohut in the Dayroom. Can you explain if and how the Dayroom was decontaminated?

A1. Yes the dayroom was decontaminated with soap and water.

S. Wiswell                                                            **DATE:** 04/29/2021
STAFF SIGNATURE

               **BADGE #:** 84773                           **PERNR:** 3▓▓▓

**NARRATIVE REVIEWED:** Yes                      **REVIEWED BY STAFF:** Nevarez, F▓▓▓
      **REVIEWED DATE:** 04/29/2021                    **REVIEWED TIME:** 17:19:20

CDCR
**INCIDENT REPORT PACKAGE**
PAGE: 22

REPORT NO. IRTR161 - 12

**INCIDENT LOG NUMBER: 000000000021670**

PROCESSED: 05/07/2021 15:03

REQUESTOR: E. Sanders

## STAFF NARRATIVE

| | |
|---|---|
| **STAFF NAME:** Blancas, R███████ | **NARRATIVE TYPE:** Initial Report |
| **CREATED DATE:** 04/28/2021 | **CREATED TIME:** 23:36:43 |

### NARRATIVE

On Wednesday, April 28, 2021, at approximately 2046 hours, while assigned as Facility D Building One Floor Officer #2, I monitored the evening dayroom program from the Officer's Podium where I observed inmates KOHUT, AN-1162, (DFB1-226U) and MILLS, BH-8082, (DFB1-134L) striking each other with their fists, aiming for the upper-torso and facial areas. The fight began in C-section of the dayroom, nearest the stairs, adjacent the Officer's Podium. Kohut and Mills continued to strike each other with their fists while traveling to the center of the dayroom, leading to the front of the Officer's Podium. I verbally order both inmates to "Get down" with negative results; both Kohut and Mills continued striking each other with their fists to the upper-torso areas. I notified Central Control via institutional radio and activated my Personal Alarm Device to initiate a code-one response. Control Booth Officer; M. Reyes ordered all inmate(s) on the dayroom to "Get down" via Public Address System (P.A). All inmates complied with the exception of Kohut and Mills who continued to strike each other with their first to the upper-torso area. Facility D Building One Floor Officer #1; S. Wiswell and I began forming a skirmish line approximately six to eight feet from the combatants, facing the direction of A-Section dayroom. Officer Wiswell and I gave additionally verbal orders to Kohut and Mills to "Get down" again with negative results, both Kohut and Mills continued to strike each other with their fists to the facial areas, subsequently Mill fell to the ground laying on his back. From the Skirmish line I observed Officer Wiswell deploy one (1) burst from his department issued Oleoresin Capsicum (OC) Pepper Spray at an approximate distance of six (6) feet, in the direction of Kohut's facial area. I observed the chemical agent (OC) Pepper Spray strike Kohut's upper-torso and facial area(s), Mills and Kohut separated and assumed prone positions on the ground without further incident. Responding staff arrived and joined the formed skirmish line. Facility D Security Patrol Officer #4; D. Ortiz and I formed a contact/cover team. Officer Ortiz provided coverage while I secured Mills in handcuffs and performed a clothed-body search with negative results for any contraband. Officer Ortiz provided coverage while I escorted Mills to Facility D Program Office. Officer Ortiz searched the inner and outer area of Holding Cell #1; with negative results for any contraband. I secured Mills into Holding Cell #1 and performed an unclothed-body search with negative results for any contraband. This concludes my involvement in this incident.

R. Blancas
_____
STAFF SIGNATURE

**DATE:** 04/28/2021

**BADGE #:** 84558

**PERNR:** ████

| | |
|---|---|
| **NARRATIVE REVIEWED:** Yes | **REVIEWED BY STAFF:** Nevarez, F████████ |
| **REVIEWED DATE:** 04/28/2021 | **REVIEWED TIME:** 23:37:27 |

CDCR
**INCIDENT REPORT PACKAGE**
PAGE: | 24

REPORT NO. IRTR161 - 12
**INCIDENT LOG NUMBER: 000000000021670**
PROCESSED: 05/07/2021  15:03
REQUESTOR: E. Sanders

### STAFF NARRATIVE

| | |
|---|---|
| **STAFF NAME:** Reyes, M████ | **NARRATIVE TYPE:** Initial Report |
| **CREATED DATE:** 04/28/2021 | **CREATED TIME:** 23:14:06 |

#### NARRATIVE

On Wednesday, April 28, 2021 at approximately 2046 hours, as Facility D Building One Control Booth Officer, I was monitoring the evening dayroom program when I observed in C-section of the dayroom nearest to the stairwells, inmates MILLS, BH8082, (DFB1-134L) and KOHUT, AN1162, (DFB1-226U) engaging in a fight. Both inmates were striking each other with their fists to the upper-torso and facial areas. Utilizing the Public Address (PA) System, I ordered all inmates in the dayroom to "Get down" to which all inmates complied with the exception of Mills and Kohut who continued fighting. Facility D Building One Floor Officer #2; R. Blancas notified Central Control via institutional radio to initiate a code-one response and activated his Personal Alarm Device. Officer Blancas and Facility D Building One Floor Officer #1; S. Wiswell formed a skirmish line in front of the Officer's Podium, facing in the direction of A-Section dayroom. Officer Blancas and Wiswell gave additional verbal orders to "Get down"; with negative results, both Kohut and Mills continued to strike each other with their fists, subsequently Kohut knocked Mills to the ground. I observed Officer Wiswell deploy one (1) burst of his department issued Oleoresin Capsicum (OC) Pepper Spray in the direction of the Kohut's upper-torso area. Due to my elevated post, I cannot positively determine the distance and where the chemical agent landed, nor if any other person(s) were exposed. Kohut and Mills separated and assumed a prone position on the ground. Responding staff arrived, I continued to monitor all inmate(s) in the dayroom while responding staff escorted Kohut and Mills out of the building. I conducted a recall of all non-involved inmates in the dayroom and secured all inmates in their assigned housing. This concludes my involvement in this incident.

M. Reyes
STAFF SIGNATURE
**DATE:** 04/28/2021

**BADGE #:** 89460
**PERNR:** ████

| | |
|---|---|
| **NARRATIVE REVIEWED:** Yes | **REVIEWED BY STAFF:** Nevarez, F████ |
| **REVIEWED DATE:** 04/28/2021 | **REVIEWED TIME:** 23:16:37 |

| | |
|---|---|
| **STAFF NAME:** Reyes, M████ | **NARRATIVE TYPE:** Supplemental Report |
| **CREATED DATE:** 04/30/2021 | **CREATED TIME:** 17:42:58 |

#### NARRATIVE

Question #1:
In your report you indicate there were other inmates in the dayroom, were there any uninvolved inmates near the incident location that may have been unintentionally exposed to chemical agents? If so, were they offered decontamination?

Answer #1:
No, there were no non involved inmates near the incident location.

M. Reyes
STAFF SIGNATURE
**DATE:** 04/30/2021

**BADGE #:** 89460
**PERNR:** ████

| | |
|---|---|
| **NARRATIVE REVIEWED:** Yes | **REVIEWED BY STAFF:** Wilson, M████ |
| **REVIEWED DATE:** 04/30/2021 | **REVIEWED TIME:** 18:11:56 |



**CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation**

# DISCIPLINARY HEARING RESULTS

| | | |
|---|---|---|
| Institution Name: Pleasant Valley State Prison | Facility: PVSP-Facility D | Log Number: 000000007083306 |
| Inmate Name: KOHUT, JONATHAN J. | CDC #: AN1162 | Bed Number: PVSP-D - D 001 2 - 226001U |
| TABE Score: 12.9 | MH LOC: CCCMS | DDP Status: NCF |

## DUE PROCESS

Rule Violation #: 3005(d)(1)                                        Specific Act: Fighting

Level: Serious                                                              Offense Division: Division D

Offense Occurrence: ⌈1st Occurrence⌉

Violation Date: 04/28/2021                                        Violation Time: 20:46:00

Hearing Date: 05/21/2021                                        Hearing Time: 15:50:00

Did a laboratory confirm the evidence tested positive for Controlled substances?: ⌈N/A⌉

| Actions Taken | | | | |
|---|---|---|---|---|
| **Date** | **Time** | **Type/Reason** | **Staff** | **Elapsed Days** |
| 04/29/2021 | 18:44:55 | RVR Ready for Review by Supv. | S. Wiswell | 1 |
| 04/29/2021 | 18:55:14 | RVR Approved by Supervisor | F. Nevarez | 1 |
| 04/30/2021 | 12:26:59 | RVR Classified | E. Sanders | 2 |
| 04/30/2021 | 15:20:57 | Notice of Pending Charges Sent to Rcds. | M. Chamness | 2 |
| 04/30/2021 | 15:55:26 | Inmate Copy Served Initial Rules Violation Report | M. Chamness | 2 |
| 04/30/2021 | 15:56:27 | Inmate Copy Served Medical Evaluation Report | M. Chamness | 2 |
| 04/30/2021 | 15:57:09 | Inmate Copy Served Other | M. Chamness | 2 |
| 05/07/2021 | 18:27:17 | Inmate Copy Served Incident Report | M. Chamness | 9 |

All Time Constraints Met?:  Yes                        SHO/HO DDP Certified?: ⌈N/A⌉

**Due Process Additional Information:**

## HEARING

◉ Subject elected not to participate in the adjudication process by refusing to attend the hearing. An Informational Chrono was generated documenting the refusal to attend the hearing.
◉ Subject was Present, in good health and ready to proceed.

**Hearing Additional Information**

---

## DISABILITY

☐ Hearing ☐ Vision ☐ Mobility ☐ Learning ☐ Developmental/Cognitive ☐ Other ☑ None

Requires Accommodation? [No]

### DDP Specific Information

128-C2 Reviewed? [Yes]                    Current DDP Status Date: [04/06/2000]

Did the Reporting Employee document the use of Adaptation Support(s)? [N/A]

| Adaptive Support | Contribute | How | |
|---|---|---|---|
| | | | |

| Victimization | Contribute | How | |
|---|---|---|---|
| | | | |

**Disability Additional Information:**

---

## MENTAL HEALTH ASSESSMENT

Mental Health Assessment Requested: No

Reason for Mental Health Assessment Request:

Clinical Staff Recommended Staff Assistance Assignment:

Clinical Staff determined Mental Health Symptoms strongly influenced behavior and recommended alternate documentation:

Clinical Staff determined Developmental Disability strongly influenced behavior and recommended alternate documentation:

Clinical Staff determined Mental Health Symptoms contributed to behavior:

Clinical Staff determined Developmental Disability contributed to behavior:

Clinical Staff provided information when assessing the penalties:

---

## STAFF ASSISTANT

Staff Assistant Assigned: No

---

Reason for assignment of Staff Assistant:

| SA Name | Date Assigned | Certified? | Meet 24 hours prior to hearing? | Present? | |
|---------|---------------|------------|----------------------------------|----------|--|
|         |               |            |                                  |          |  |

**Staff Assistant Additional Information:**

|  |
|--|

## INVESTIGATIVE EMPLOYEE

Investigative Employee Assigned: No

Reason for assignment of Investigative Employee:

**Investigative Employee Additional Information:**

|  |
|--|

## CONFIDENTIAL INFORMATION

Confidential Information Used: No

| Confidential Document Number | Author of Confidential Document | Date of Confidential Document | Reviewed by SHO/HO | Deemed Confidential | Reason(s) Information was Deemed Confidential | |
|---|---|---|---|---|---|--|
|  |  |  |  |  | ▣ Information which, if known to inmates, would endanger the safety of person(s). ▣ Information which, if known to inmates, would jeopardize the security of the institution. ▣ Specific medical or Psychological Information which, if known to inmates, would be medically or psychologically detrimental to the inmate. ▣ Information provided and classified confidential by another governmental agency. ▣ A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file. |  |

| Confidential Document | Confidential Source | Confidential Disclosure | Sufficient Information | Reason(s) Deemed Reliable | |
|---|---|---|---|---|--|

| Number | Number | Form Issued | Disclosed | |
|--------|--------|-------------|-----------|---|
| | | | | ☒ The confidential source has previously provided information which has proved to be true. ☒ Other confidential sources have independently provided the same information. ☐ The information provided by the confidential source is self-incriminating. ☒ Part of the information provided by the confidential source is corroborated through investigation or by information provided by non-confidential sources. ☐ The confidential source is the victim. ☒ This source successfully completed a polygraph examination. |

**Confidential Additional Information:**

---

## WITNESSES

Witnesses requested at Hearing

☒ Reporting Employee          ☐ Staff Assistant          ☐ Investigative Employee

☒ Other                       ☐ Inmate                   ☑ None

| Non-Inmate Witness(es) | | | | |
|------------------------|--|--|--|--|
| **Name** | **Rank** | **Type** | **Granted?** | |

**Questions Asked**

| Inmate Witness(es) | | | | |
|--------------------|--|--|--|--|
| **CDC#** | **Name** | **Bed** | **Granted?** | |

**Questions Asked**

**Witness Additional Information:**

---

## PLEA AND STATEMENT

**PLEA/STATEMENT:** The above circumstances were read aloud to subject and elected to plea: [ Not Guilty ]

◉ Subject declined to make a statement
◉ Subject made a statement

**Comments:**

Staff have this all wrong, the reports state we were swinging at each other striking in the face and upper torso area is not true, he was swinging at me. the 7219's don't reflect injuries or marks to support the reports. He was trying to fight me and I told him I wouldn't fight him. He came at me swinging on me. I kept backing away from him trying to avoid fighting. he swung at me and grazed my lip, so I punched him one time and knocked him down. I thought he going to get up so I advanced toward him again. Them staff sprayed us.

## FINDINGS

Subject was found: Guilty as Charged based on a preponderance of evidence.

Lesser Included Charge:

Level:                                                      Offense Division:

Offense Occurrence:

**Comments:**

SHO reviewed and weighed all available evidence and concludes a guilty finding is substantiated. The subject is not arguing the fact he punched Mills in the face one time and knocked him down and thought he was going to get up so he advanced toward him again, his entire defense is simply stating he was the victim and was only defending himself. The SHO notes at the time the subject punched Mills knocking him to the ground, he became the aggressor of the incident. SHO finds subject guilty in good cause, the preponderance of evidence supported the charge.

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

**Comments:**

## EVIDENCE

The following evidence was used to support the findings:

AVSS Available: No

AVSS Impact: -

**Comments:**

1. The R. E. written report submitted stating in part "Mills and Kohut continued to strike each other in the upper torso and facial area with their fists, I observed Mills loose his balance and fall to ground, landing on his back. Mills covered his upper torso area with his arms and hands attempting to defend himself. I gave additional orders to "Get Down" with negative results, I observed Kohut lean forward in an attempt to strike Mills while he lay on the ground."

2. CDCR 7219, Medical Report of Injury of both subjects documenting injuries and the use of chemical agents consistent with being in a physical altercation.

3. Subjects partial admission of guilt at the time of the hearing.

## DISPOSITION

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 90 Days | No | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Confined to Quarters Days | | | ☑ | ☑ | ☑ | ☑ | | |
| Confined to Quarters Weekends | | | ☑ | ☑ | ☑ | ☑ | | |
| Disciplinary Detention | | | ☑ | ☑ | ☑ | ☑ | | |
| Privilege Group C | | | ☐ | ☐ | ☐ | ☐ | | |
| Loss of Pay | | | | | | | | |
| Canteen Privileges | | | ☑ | ☑ | ☑ | ☑ | | |
| Phone Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Extra Duty | | | ☑ | ☑ | ☑ | ☑ | | |
| Yard Recreation Privileges | | | ☑ | ☑ | ☑ | ☑ | | |
| Day Room Privileges | | | ☑ | ☑ | ☑ | ☑ | | |
| Packages Privileges | | | ☑ | ☑ | ☑ | ☑ | | |
| Property Restrictions | | | ☑ | ☑ | ☑ | ☑ | | |
| Visiting Privileges | | | ☑ | ☑ | ☐ | ☑ | | |
| Contact Visiting Privileges | | | ☑ | ☑ | ☑ | ☑ | | |
| Contact Visiting (Permanent Loss) | | | | | | | | |
| Loss of Family Visits | | | ☑ | ☑ | ☑ | ☑ | | |
| Permanent Loss of Family Visits | | | | | | | | |
| Trust Account Hold | | | | | | | | |
| Mandatory Drug Testing | | | | | | | | |
| IEX Control Suit | | | | | | | | |

Counseled Regarding Misconduct:  without reprimand

☑ Impose Suspended Sanctions                    ☑ Reinstate Suspended Sanctions

**Sanction Mitigation Additional Information:**

reasoning used to arrive at their decision.)

**Comments:**

Referred to Classification Committee  N/A

For ☒SHU Term Assessment ☒Program Review ☐Un-Assignment ☐Substance Abuse Treatment

**Disposition Additional Information:**

## ENEMY CONCERNS

◉ Not Applicable
◉ Subject states he/she does not have Enemy or Safety Concerns.
◉ One or more of the inmates involved has stated there is lingering animosity towards one another. Therefore, the SHO has entered non-confidential separation alerts for the following inmates:
◉ Based on the totality of circumstances and/or information garnered by staff, the Hearing Official has determined an enemy situation exists and ensured the below non-confidential separation alerts were entered:

## SECURITY THREAT GROUP

Security Threat Group Nexus?: No

**Security Threat Group Nexus Additional Information:**

## FINAL SECTION

| Contraband Type | Disposition | Disposition Comments | |
|---|---|---|---|
| | \ | | |

**Additional Information:**

Both inmates signed compatibility chronos stating they do not consider each other enemies as documented in the Related Standard Forms section.

## CREDIT RESTORATION

☑ Subject was advised of his/her right to restoration of credits under CCR 3327, 3328, and 3329.

☐ Subject was advised Credit Forfeiture for a Division 'A', 'B' or 'C' offense will not be restored.

☑ At the conclusion of the hearing Subject was advised of the findings, disposition, and his/her right to appeal per CCR 3084.1.

**Hearing Official**

D. May                                    ◎

| | TITLE:<br>LT. | DATE:<br>05/26/2021 |

## FINDINGS (BY CDO)

Subject was found: [ Guilty as Charged ] based on a preponderance of evidence.

Lesser Included Charge:

Level:                                              Offense Division:

Offense Occurrence:                         CDO Summary: [ Affirming The Hearing Results ]

**Comments:**

## DISPOSITION (BY CDO)

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 90  Days | No | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Days | | | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Weekends | | | ☐ | ☐ | ☐ | ☐ | | |
| Disciplinary Detention | | | ☐ | ☐ | ☐ | ☐ | | |
| Privilege Group C | | | ☐ | ☐ | ☐ | ☐ | | |
| Loss of Pay | | | | | | | | |
| Canteen Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Phone Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Extra Duty | | | ☐ | ☐ | ☐ | ☐ | | |
| Yard Recreation Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Day Room Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Packages Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Property Restrictions | | | ☐ | ☐ | ☐ | ☐ | | |
| Visiting Privileges | | | ☐ | ☐ | ☐ | ☐ | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Contact Visiting Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Contact Visiting (Permanent Loss) | | | | | | | | |
| Loss of Family Visits | | | ☐ | ☐ | ☐ | ☐ | | |
| Permanent Loss of Family Visits | | | | | | | | |
| Trust Account Hold | | | | | | | | |
| Mandatory Drug Testing | | | | | | | | |
| IEX Control Suit | | | | | | | | |

☐ Impose Suspended Sanctions          ☐ Reinstate Suspended Sanctions

**Comments:**

---

**Chief Disciplinary Officer**

**Comments:**

---

| M. Martin | | TITLE: AW | DATE: 05/27/2021 |
|---|---|---|---|

CDCR SOMS ISST126 - DISCIPLINARY HEARING RESULTS

<u>-EXHIBIT #3-</u>

- 602 Log No.#114099                    3.1.1-6

- 602 Log No.#123815                    3.2.1-8

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 602 (Rev. 03/12)
Side 1

| IAB USE ONLY | Institution/Parole Region | Log # | Category |
|---|---|---|---|
| | | 14099 | |
| | | FOR STAFF USE ONLY | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.   WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number | Unit/Cell Number | Assignment |
|---|---|---|---|
| Kolver | AN1162 | D1-226 | 3M PTR / TSU D1 |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):
SUBMISSION OF FALSE REPORT, STAFF COMPLAINT (CCR TITLE 15 § 3084(a) 3084.5 (a)(4))

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A):
APPELLANT HEREBY ALLEGES THAT OFFICER S. WISWELL (BERN 92082) HAS SUBMITTED AN ACCOUNT THAT IS FALSE IN NATURE AND CONTRADICTORY TO WHAT ACTUALLY TOOK PLACE. THE SUBMISSION OF NAMED OFFICERS DEPICTION OF EVENTS

B. Action requested (If you need more space, use Section B of the CDCR 602-A):
I WANT RVR # 7083306 TO BE REMOVED FROM MY C-FILE FOR STARTERS. IF NOT, I'D REQUEST THAT ON PG. 3 MY APPARENT WAIVER BE CHANGED TO "REQUESTED." I WANT AN I.E. TO INTERVIEW SOME WITNESSES FOR MY PROCESS BUT MOST OF ALL, I JUST

Supporting Documents: Refer to CCR 3084.3.
☒ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory, CDC 128-G, Classification Chrono):
DIAGRAM OF D-1 DEPLAYING          ALSO SEE RVR # 7083306
ACTUAL COURSE OF CONDUCT.

☐ No, I have not attached any supporting documents. Reason

Inmate/Parolee Signature: _____     Date Submitted: 5/3/21
☐ By placing my initials in this box, I waive my right to receive an interview.

| C. First Level - Staff Use Only | Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☒ No |
|---|---|
This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☒ Rejected (See attached letter for instruction). Date:          Date:          Date:          Date:
☐ Cancelled (See attached letter). Date:
☐ Accepted at the First Level of Review.

Assigned to:                    Title:               Date Assigned:          Date Due:

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location and complete the section below.
Date of Interview:                    Interview Location:
Your appeal issue is: ☐ Granted  ☐ Granted in Part  ☒ Denied  ☐ Other:
See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer:                    (Print Name)     Title:          Signature:          Date completed:
Reviewer:                    (Print Name)     Title:          Signature:
Date received by AC:

| | AC Use Only |
| | Date mailed/delivered to appellant ___/___/___ |

STAFF USE ONLY

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR-0602-A (REV. 03/12)
Side 1

| | IAB USE ONLY | Institution/Parole Region | Log # | Category |
|---|---|---|---|---|
| | | | | |
| | | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number | Unit/Cell Number | Assignment |
|---|---|---|---|
| KOANE, J. | AN11162 | D1-226 | 3/W PTR/ISUDT |

**A.** Continuation of CDCR 602, Section A only (Explain your issue) CONSTITUTES STAFF MISCONDUCT AS DEFINED IN CCR TITLE 15 §3084 (3) AND APPELLANT IN ADDITION TO REQUESTING THIS APPEAL BE INVESTIGATED AND ADJUDICATED AS A STAFF COMPLAINT IN ACCORDANCE WITH CCR TITLE 15 §3084.6 (5)(4) ALSO TAKES ISSUE WITH RVR # 7083306 CONTAINED A WAIVER OF AN I.E. AND/OR STAFF ASSISTANT THAT WAS NEVER MADE BY THE APPELLANT. AT NO TIME DID THE APPELLANT MAKE ANY WAIVER IN REGARDS TO THE RVR AT ISSUE. APPELLANT HEREBY REQUESTS THAT HE BE AFFORDED AN I.E. BY THE SHO PURSUANT TO CCR TITLE 15 §3315 (d)(1)(A)(3) FOR IF HE'S NOT THERE IS NO WAY FOR HIM TO RECEIVE A FAIR HEARING. THE SUBMISSION OF THE OFFICER'S REPORT RAISES GRAVE CONCERNS AND HAS ALARMING IMPLICATIONS FOR INMATES WHOSE DISCIPLINARY HISTORY CARRIES SERIOUS AND SIGNIFICANT CONSEQUENCES IN FRONT OF THE PAROLE BOARD. THERE IS NO SCENARIO IN WHICH THE APPELLANT WILL CONCEDE AN OUNCE OF TRUTH BEING CONTAINED WITHIN S. WISWELL'S ACCOUNT. THAT REPORT CONTAINS VERBIAGE IN EXCESS AND ESSENTIALLY OFFERS AN EXPLANATION ATTEMPTING TO JUSTIFY A USE OF FORCE RATHER THAN PRESENT A TRUE AND FACTUAL ACCOUNT OF WHAT TOOK PLACE. I FIND IT ALARMING TO CONSIDER HOW FREQUENTLY AN RVR FULL OF FALSITY MAY HAVE BEEN AUTHORED BY THIS OFFICIAL. SOME OF US INMATES HAVE A LOT TO LOSE AND THIS 602 & WISWELL CAN CONSIDER A COURTESY NOTICE OF MY INTENTION TO SEE TO IT THAT THIS ISSUE BE MADE RIGHT, IN EVERY CAPACITY.

Inmate/Parolee Signature: [signature]    Date Submitted: 6/3/21

**B.** Continuation of CDCR 602, Section B only (Action requested) WANT THE SHO TO HAVE A TRUE AND FACTUAL BASIS UPON WHICH A FAIR AND JUST DECISION CAN BE MADE. I UNDERSTAND VERY WELL THAT AN INMATE DOES NOT POSSESS THE PURVIEW TO REQUEST AN OFFICER BE SUSPENDED FROM AUTHORING REPORTS, BUT I WANT THE ADMINISTRATION TO BE UNDERSTANDING OF THE GRAVITY THAT FALSITIES PRESENT TO CERTAIN INMATES, LIFERS WHO HAVE YEARS OF THEIR LIVES HANGING IN THE BALANCE IN PARTICULAR. IF PATTERN ARE ALLOWED TO DEVELOP AND PERSIST THAT OFFER NO CONSEQUENCE FOR AN OFFICER WHO SUBMITS A FALSE REPORT, IT WILL BE ENCOURAGED AND OVER TIME, SWEPT UNDER THE RUG. IF NOBODY IS REVIEWING THE INTEGRITY OF REPORTS, THAT LEAVES US AT THE MERCY OF THE AUTHORS PEN AND THEIR DESIRED NARRATIVE. THAT REPORT IS SIMPLY NOT AN ACCURATE ACCOUNT OF WHAT HAPPENED AND ITS NOT RIGHT THAT. I BE PUT IN THE POSITION TO TAKE ACCOUNTABILITY AND RESPONSIBILITY FOR THE ACTIONS OF AN OFFICER TRYING TO COVER HIS ASS. THAT REPORT NEEDS TO BE STRUCK FROM MY C-FILE OR IN THE ALTERNATIVE, AN ATTACHMENT INSERTED ATTESTING TO THE FACT THAT S. WISWELL PRESENTED A FALSE ACCOUNT THAT WAS SUBSEQUENTLY INVESTIGATED AND JUSTLY AND PROPERLY ADJUDICATED. THIS IS A OIA WORTHY ISSUE.

Inmate/Parolee Signature: [signature]    Date Submitted: 6/3/21

STAFF USE ONLY

C SECTION

STAIRS

TV Area

B STAIRS

SECTION

PODIUM

1 = POINT OF INITIAL CONTACT
2 = POINT OF KOHUT PINNED OUT
3 - POINT OF MILLS
• ----- (DOTTED LINE IS KOHUTS RETREAT)

X = ONLY AND SOLE POINT OF
CONTACT BETWEEN KOHUT
AND MILLS.

STAIRS

TV AREA

SECTION

A STAIRS



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# OOG ACKNOWLEDGMENT OF RECEIPT AND CLOSURE OF GRIEVANCE

**Offender Name:** KOHUT, JONATHAN J.          **CDC#:** AN1162

**Date:** 05/03/2021

**Current Location:** PVSP-Facility D          **Current Area/Bed:** D 001 2226001U

**From:** Office of Grievances at Pleasant Valley State Prison

**Re:** Log # 000000114099

The California Department of Corrections and Rehabilitation Office of Grievances at Pleasant Valley State Prison received your grievance on 05/03/2021. Your grievance has not been assigned for review and response because your claim(s) is being handled as specified below.

**Claim # 001:**

Your claim concerning Offender Discipline;Serious Rules Violation Report is being rejected by Office of Grievances for the reason(s) indicated below:

Your claim concerns an anticipated policy, decision, action, condition or omission by the Department or departmental staff, generally meaning the action has not happened yet. Once a decision or action has taken place and if you are still dissatisfied, you may file a new grievance.

A review of the Strategic Offender Management System (SOMS) on 5/3/2021, reveals your Rules Violation Report (RVR) has not been finalized. You may not grieve a RVR until the RVR has been finalized. Once the RVR has been finalized, you may submit a new grievance.

This serves as your response by the Office of Grievances. If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals.

Do not resubmit this claim to the Office of Grievances at Pleasant Valley State Prison.

**Claim # 002:** Request for an I.E.

Your matter concerning Offender Services;Request for Interview, Item, Assistance or Service has been reviewed and is outside the scope of the grievance process. The Office of Grievances has redirected your claim. Your request will be addressed by appropriate staff at Pleasant Valley State Prison as determined by the Reviewing Authority.          This request was forwarded to the D yard Captain.

CDCR SOMS OGTT300
OOG ACKNOWLEDGMENT OF RECEIPT AND CLOSURE OF GRIEVANCE

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| **STAFF USE ONLY** | Appeal #: | Date Received: |
|---|---|---|
| | Date Due: | |
| | Categories: | |
| | Grievance #: 114099 | |

**Claimant Name:** Kohut, Jonathon    **CDCR #:** AN1162

**Current Housing/Parole Unit:** PVSP    **Institution/Facility/Parole Region:** PVSP / D FACILITY

☐ There are no claims that can be appealed.

☐ The following claims cannot be appealed:

**REC BY OOA**
**MAY 24 2021**

**Claim #s:**

_____

_____

_____

_This is the process to appeal the decision made regarding a claim that is not listed above._

**Claim #:** 001

Explain the reason for your appeal of any claims not listed above. Be as specific as you can.

_I am dissatisfied with the response I was given because_ AN OFFICER SUBMITTING A FALSE ACCOUNT OF AN EVENT, HAS THE POTENTIAL TO COST A MAN YEARS OF HIS LIFE THAT ARE IRREPLACEABLE. IT IS UNETHICAL AND CONSTITUTES STAFF MISCONDUCT PER CCR, TITLE 15, § 3084 (G) AND IT IS MY POSITION THAT IT IS AN ENTIRELY SEPARATE ISSUE FROM WHAT THE INSTITUTION RESPONDED WITH. NOTWITHSTANDING THE AD-JUDICATION THAT AT SOME POINT WILL RESULT FROM THE INCIDENT, I DO NOT RELISH THE IDEA OF LIVING AT A FACILITY WHERE FALSE REPORTS GET SUBMITTED DUE TO PATTERNS THAT HAVE DEVELOPED AND PERS-ISTED BECAUSE THEY OFFER NO REPERCUSSIONS. INCIDENT LOG # 0210 ID CONTAINS TWO OTHER REPORTS (SUPPLEMENTALS) AUTHORED BY OFFICERS M. REYES (#99040) AND R. BLANCAS (#84558) THAT CONTAIN FALSE NARRATIVES AS WELL. A CURSORY GLANCE AT THE 7219'S ATTACHED TO THE REPORT TELLS THE TRUTH. INMATES THAT PUNCH EACH OTHER IN THE TORSO AND FACE, LEAVE REDENED AREAS. THE LACK OF INJURY TO INMATE MILLS AND MYSELF IS INCONSISTENT WITH THE OFFICERS' CLAIMS. I STRUCK INMATE MILLS A SINGLE BLOW, AND DID SO TO DEFEND MYSELF. IF I HAVE TO FILE A PETITION IN THE FRESNO COUNTY SUPERIOR COURT, I WILL. PLEASE INVESTIGATE THE INCIDENT.

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have the documents, identify them as best you can below:

YES, THE 7219 MEDICAL REPORTS AND ATTACHED DIAGRAM TELL THE STORY OF WHAT TRULY HAPPENED. I WAS RETREATING THE ENTIRE INCIDENT, EVEN WHEN I STRUCK INMATE MILLS. I WAS ATTACKED, AND THE OFFICERS DIDN'T SEE WHAT HAPPENED I BELIEVE. NEVER, WAS THERE EVEN A SPLIT SECOND WHEN WE WERE TRADING BLOWS. I SWUNG A SINGLE TIME, THAT'S IT. I DID ALL I POSSIBLY COULD TO AVOID THE INCIDENT AND I BELIEVE THESE NARRATIVES ARE RETALIATION FOR PRIOR 602'S FILED INVOLVING R. BLANCAS AND M. REYES. I HAVE A 602 CURRENTLY IN THE OOA THAT I BELIEVE TO BE THE UNDERLYING MOTIVATION BEHIND THESE REPORTS.

**DISTRIBUTION**    Original: Claimant's File    **Copies:** DAI, DAPO, and Claimant



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# CLAIMANT APPEAL CLAIMS DECISION RESPONSE

**Re:** Appeal Claims Decision Response

**Offender Name:** KOHUT, JONATHAN JOSEPH          **Date:** 07/21/2021
**CDC#:** AN1162
**Current Location:** PVSP-Facility D          **Current Area/Bed:** D  001 2 - 226001U

**Log #:** 000000114099

---

**Claim #  001**

**Institution/Parole Region of Origin:** Pleasant Valley State Prison          **Facility/Parole District of Origin:** PVSP-Facility D
**Housing Area/Parole Unit of Origin:**
**Category:** Offender Discipline          **Sub-Category:** Serious Rules Violation Report

## I. ISSUE ON APPEAL

You are appealing the Office of Grievances' rejection of this claim as anticipatory.

## II. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

Title 15, sections 3481 and 3487(a)(2).

### B. DOCUMENTS CONSIDERED

CDCR Form 602 and CDCR Form 602-2; Rules Violation Report log #7083306.

## III. REASONING AND DECISION

The Office of Appeals finds that the rejection of this claim as anticipatory was not proper, as this claim concerns an allegation that Officer Wiswell submitted a false Rules Violation Report under log #7083306. Since this claim concerns an allegation that staff filed a false report, rather than disputing the outcome of the disciplinary hearing, you were not required to wait until the hearing was adjudicated before filing this claim. The record reflects that you first became aware of this alleged issue when you received an initial copy of the report on April 30, 2021, and you filed this claim within the applicable timeframe on May 3, 2021. Therefore, this claim is granted.

## IV. REMEDY

The Office of Grievance shall open a new grievance to review and respond to this claim on the merits.

**Decision: Granted**

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is granted. This decision exhausts the administrative remedies available to the claimant within CDCR.

| Staff Signature | Title | Date/Time |
|---|---|---|
| A. Vasquez [VAAL001] | AW (A) | 07/20/2021 |

EXHIBIT #3.2.1

STATE OF CALIFORNIA                                                                              DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)                                                                                                                    **Side 1**

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | 123815 | |
| | | *FOR STAFF USE ONLY* | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations (CCR), Title 15, Section 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal.  If additional space is needed, *only* one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.                      **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| KNUT, JONATHON | AN1162 | D1-226 | 3RD PTR/IGUDT |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

FINDING OF GUILT; RVR # 7083306

A. **Explain your issue** (If you need more space, use Section A of the CDCR 602-A):
WITH A RESPECT TO THE POSITION ADOPTED BY THE SHO, I WAS FOUND GUILTY FOR THE
ACT OF DEFENDING MYSELF AND IT'S NOT RIGHT. I WAS RELENTLESSLY PURSUED AND
CHALLENGED TO A FIGHT BY AN INMATE WITH AN EXTENSIVE DISCIPLINARY HISTORY, WHO

B. **Action requested** (If you need more space, use Section B of the CDCR 602-A):
I RESPECTFULLY REQUEST THAT THE FINDING OF GUILT BE VACATED AND OVERTURNED.
I WOULD ALSO REQUEST AN OPPORTUNITY FOR THE WITNESSES I WISHED TO CALL TO
HAVE THEIR STATEMENTS TAKEN. THE REPORTS SUBMITTED BY THE FLOOR AND TOWER

**Supporting Documents: Refer to CCR 3084.3.**
☒ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

DIAGRAM DEPICTING OCCURENCE _____ _____

_____ _____ _____

☐ No, I have not attached any supporting documents. Reason: _____

_____

Inmate/Parolee Signature: _____         Date Submitted: 5/31/21

☐ **By placing my initials in this box, I waive my right to receive an interview.**

JUN - 7 2021

STAFF USE ONLY

C. **First Level - Staff Use Only**                                            Staff – Check One:  Is CDCR 602-A Attached?   ☐ Yes   ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: _____   Date: _____   Date: _____   Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the First Level of Review.
   Assigned to: _____   Title: _____   Date Assigned: _____   Date Due: _____

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.
         Date of Interview: _____   Interview Location: _____
Your appeal issue is: ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
         See attached letter.  If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name)   Title: _____   Signature: _____   Date completed: _____
Reviewer: _____ (Print Name)   Title: _____   Signature: _____
Date received by AC: _____

| | AC Use Only |
|---|---|
| | Date mailed/delivered to appellant ___/___/___ |

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| NAME OF INSTITUTION | LOCATION OF EVALUATION | DATE |
|---|---|---|
| PUSP | Delta Program | 4-28-21 |

| REASON FOR REPORT ☐ ALLEGATION | ☐ ON THE JOB INJURY | ☐ USE OF FORCE | ☐ INJURY | |
|---|---|---|---|---|
| ☑ UNUSUAL OCCURRENCE | ☐ PRE AD/SEG ADMISSION | ☐ R&R | ☐ OTHER | ☐ OTM RETURNS |

| NAME LAST | FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|---|
| Mills | J | BH8082 | MG | N/a |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | TIME SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| Delta 1 | 4-28-21 | 2046 | 2055 | MG | N/a |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"No comment"

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | ④ |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| Swollen Area | ⑩ |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
| | 18 |

Right      Left

# 4
# 10

Front      Back

# 4
# 10

| Chemical Agent Exposure? | YES /(NO) |
|---|---|
| Chem. Agent Exposure Area | EX |
| Decontaminated w/ Water? YES /(NO)/ REFUSED | |
| Decontaminated w/ Air? YES /(NO)/ REFUSED | |
| Self-decontamination Instructions given ? | YES /(NO) |
| Staff issued Exposure packet ? | YES /(NO) |

Q 15 min. check times

| Initial | N/a | 1st Check | N/a |
|---|---|---|---|
| 2nd Check | N/a | Final | N/a |

TIME/DISPOSITION
Returned to custody C

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | PERNR / INST. ID # | RDOs | ASSIGNMENT AREA |
|---|---|---|---|
| M Shap LVN    M Shap | 80522 | S/Sun | Medical |
| | 1961Y237 | | |

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A  (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.   **WRITE, PRINT, or TYPE CLEARLY** in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Kohut, Jonathon | AN1162 | D1-226 | 3/WPTE/ISUDT |

**A.  Continuation of CDCR 602, Section A only (Explain your issue):** WASN'T SUPPOSED TO BE IN THE DAYROOM
AT ALL. IT WAS MODIFIED PROGRAM AND IT WAS STAFF ERROR THAT ALLOWED MILLS OUT
OF HIS CELL AT PILL CALL. AFTER RETREATING ACROSS NEARLY 50 FEET OF DAYROOM,
ALL THE WHILE BEING REPEATEDLY SWUNG AT, FINALLY I HAD NO CHOICE BUT TO KEEP
MYSELF SAFE FROM HARM. BECAUSE AT THAT INSTANT, NOBODY ELSE WAS. I WAS
THE VICTIM, I WAS PURSUED FOR NEARLY AN HOUR, ALL THE WHILE DECLINING TO AC
CEPT REPEATED PRODDING TO FIGHT AND BEING ACCOSTED. OFFICERS' ACCOUNTS ARE
SIMPLY UNTRUE. MILLS WAS ATTEMPTING TO GET UP AGAIN, THAT'S THE REASON FOR MY
LEANING IN. MY CAGE FACTORS RENDER ME A TARGET, AND THAT'S WHAT HAPPENED HERE.
I'VE NOT RAISED MY HANDS TO ANYBODY IN ANGER AND HIT THEM IN OVER A DECADE, UNLESS
FEELING AS THOUGH I MUST TO DEFEND MYSELF. THE SVO ALSO DECLINED MY REQUEST FOR
WITNESSES AND THEREBY DENIED ME THE OPPORTUNITY TO ESTABLISH MY SIDE OF WHAT TOOK
PLACE AND I THINK THAT IS UNJUST. THE SVO ALSO COMMENTED THAT WHEN I STRUCK MILLS,
I BECAME THE AGGRESSOR. I FIND THAT TO BE A PECULIAR CONCLUSION TO REACH WHEN A
MAN HAS BEEN RELENTLESSLY STALKED AND ACCOSTED FOR NEARLY AN HOUR UNTIL FINALLY
BEING PHYSICALLY ATTACKED. BY THE TIME I HIT MILLS, MY ADRENALINE WAS UP AND I
WAS REACTING TO INSTINCT IN AN EFFORT TO KEEP MYSELF SAFE. I NEVER BRING VIOLENCE
TO ANYONE AND I BELIEVE FINDING ME GUILTY IS SIMPLY UNJUST. I BELIEVE IN THIS INSTANCE
FINDING ME GUILTY IS TANTAMOUNT TO SAYING I HAVE NO RIGHT WHATSOEVER TO DEFEND MYSELF.

Inmate/Parolee Signature: _[signature]_          Date Submitted: 5/31/21

**B.  Continuation of CDCR 602, Section B only (Action requested):** STAFF WERE UNTRUE AND THAT'S A SERIOUS ISSUE THAT I
REQUEST BE AFFORDED SOME ATTENTION. IN THE ALTERNATIVE TO MY FIRST REQUEST, I'D REQUEST A
NEW HEARING THAT WOULD GRANT MY WITNESSES. THE REPORTS AND ACCOUNTS SUBMITTED BY OFFICERS
ARE TOO DAMAGING FOR THE PURPOSES OF BOARD HEARINGS, I'M RESPECTFULLY REQUESTING THAT THEY
BE EXTRICATED FROM MY C FILE IN THE INTEREST OF JUSTICE. I THANK THE OFFICE OF GRIEVANCES
FOR THEIR TIME AND CONSIDERATION.

Inmate/Parolee Signature: _[signature]_          Date Submitted: 5/31/21

**S T A F F   U S E   O N L Y**   JUN - 8 2021

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

_____
_____
_____
_____
_____
_____

Inmate/Parolee Signature: _____    Date Submitted : _____

---

**E. Second Level - Staff Use Only**    Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes  ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _____    Interview Location: _____

Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: _____ Title: _____ Signature: _____ Date completed : _____
　　　　　　　(Print Name)

Reviewer: _____ Title: _____ Signature: _____
　　　　　　(Print Name)

Date received by AC: _____

| AC Use Only |
| Date mailed/delivered to appellant ___/___/___ |

---

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

_____
_____
_____
_____
_____

Inmate/Parolee Signature: _____    Date Submitted: _____

---

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)   Date: _____
☐ Accepted at the Third Level of Review.  Your appeal issue is ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _____
See attached Third Level response.

| Third Level Use Only |
| Date mailed/delivered to appellant ___/___/___ |

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____
_____
_____
_____

_____ Inmate/Parolee Signature: _____ Date: _____

Print Staff Name: _____ Title: _____ Signature: _____ Date: _____



**CALIFORNIA DEPARTMENT OF**
**Corrections and Rehabilitation**

# CLAIMANT GRIEVANCE CLAIMS DECISION RESPONSE

**Re:** Grievance Claims Decision Response

**Offender Name:** KOHUT, JONATHAN JOSEPH          **Date:** 07/02/2021
**CDC#:** AN1162
**Current Location:** PVSP-Facility D          **Current Area/Bed:** D 001 2 - 226001U

**Log #:** 000000123815

**Claim #:** 001
**Institution/Parole Region of Origin:** Pleasant Valley State Prison          **Facility/Parole District of Origin:** PVSP-Facility D
**Housing Area/Parole Unit of Origin:**
**Category:** Offender Discipline          **Sub-Category:** Serious Rules Violation Report

## I. CLAIM

You are submitting this claim relative to Rules Violation Report (RVR), Log No.: 7083306, dated April 28, 2021, for Fighting. You contend you were defending yourself. You contend the combatant should not have been out of their cell. You indicate you were the victim in the fight. You contend the Reporting Employee's (REs) accounts were untrue. You contend the Senior Hearing Officer (SHO) did not allow you to request witnesses at your hearing. *(INACCURATE) (SEE ATTACHED LOG # 123815)*

## II. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

California Code of Regulations (CCR), Title 15, Section 3005, Conduct.
CCR, Title 15, Section 3315, Serious Rule Violations.
CCR, Title 15, Section 3320, Hearing Procedures and Time Limitations.
Emergency California Code of Regulations (CCR), Title 15, Section 3481, Claimant's Ability to Grieve and to Appeal.
Emergency CCR, Title 15, Section 3484, Allegations of Staff Misconduct.

### B. DOCUMENTS CONSIDERED

Grievance and any included supporting documents.
RVR and all related documents.
CCR, Title 15.
Department Operations Manual (DOM).

## III. REASONING AND DECISION

Correctional staff is instructed to state clearly everything they observed when reporting an incident. An examination of your grievance issues in conjunction with the review of your supporting documents reveals on April 28, 2021, the RE documented your behavior as they saw it. The REs written report indicates on April 28, 2021, the RE observed you and Mills (CDCR No.: BH8082) striking each other in the upper torso and facial areas with your fists. Staff ordered you and Mills to get down and all complied with the exception of you and Mills, whom continue to strike each other in the upper torso and facial area with your fists. The REs report indicates the severity of the incident necessitated the use of Oleoresin Capsicum (O.C.) spray.

Your allegations of the REs report being untrue will be addressed in grievance log number 126695, Claim 001.

The REs report indicates you and Mills were striking each other. In addition, a review of the Disciplinary Hearing Results (DHR) reveals during the hearing you stated in part, "I punched him one time and knocked him down.". If an inmate claims they are the victim of a battery, it has to be clear from the evidence that the alleged victim's response was self-defense. Self-defense means you blocked the blows from the other inmate while attempting to leave the area.

Your statement that inmate Mills should not have been out of Mills' cell is irrelevant. The fact remains; you chose to participate in this violent act. The fact that you chose to participate in this violent act, is sufficient to find you guilty of fighting.

A review of the RVR does not reveal that you requested witnesses when you were served an initial copy of the RVR. In addition, the DHR reveals you did not request witnesses at your hearing. If your request for a witness was denied, the SHO would have documented the reason for the denial on the RVR, pursuant to CCR, Title 15, Section 3315(e)(2). The Senior Hearing Officer (SHO) was contacted in regards to the claim(s) in your grievance and stated, "During the hearing Kohut admitted to punching inmate Mills in the face and knocking Mills down. The REs report also speaks to Mills landing on Mills' back covering Mills' upper torso area with Mills' arms, then Kohut leaned forward in an attempt to strike Mills again, necessitating staff to spray them. At this time Kohut became the aggressor. I do not remember for sure whether or not witnesses were requested and denied during the hearing; however, during a hearing I am usually pretty liberal when it comes to granting witnesses, I don't usually miss that stuff." The evidence suggest you were given an opportunity to request witnesses at your hearing.

Pursuant to the CCR, Title 15, Section 3320(l), you were found guilty based upon a determination by the SHO that a preponderance of the evidence submitted at the hearing substantiated the charge. A preponderance of evidence means the SHO balances the evidence in support of innocence against guilt. If there is more evidence in favor of guilt than innocence, the SHO will find you guilty. The SHO accepts the more convincing of the two. Sufficient evidence exists to support the finding of guilt.

DECISION: Your claim is DISAPPROVED at the Institutional Level of Review. The evidence suggest you were given an opportunity to request witnesses at your hearing. A preponderance of the evidence submitted at the hearing substantiated the charge of Fighting.

**Decision: Disapproved**

After a thorough review of all documents and evidence presented at the Office of Grievances Level, it is the order of the Office of Grievance to DISAPPROVE the claim.

If you are dissatisfied with the decision of this claim, you may file a 602-2, appeal with the California Department of Corrections and Rehabilitation Office of Appeals.

| Staff Signature | Title | Date/Time |
|---|---|---|
| M. Faulkner [FAMA006] | CDW(A) | 07/01/2021 |

STATE OF CALIFORNIA                                                                                                DEPARTMENT OF CORRECTIONS AND REHABILITATION
**APPEAL OF GRIEVANCE**                                                                                                                    Page 1 of 2
CDCR 602-2 (03/20)

| STAFF USE ONLY | Appeal #: _____ | Date Received: _____ |
|---|---|---|
| | Date Due: _____ | |
| | Categories: _____ | |
| | Grievance #: 22815 | |

Claimant Name: KOLVE, JONATHON                    CDCR #: AN1162

Current Housing/Parole Unit: RICO            Institution/Facility/Parole Region: DI - 226

☐ There are no claims that can be appealed.

☐ The following claims cannot be appealed:

REC BY OOA
JUL 19 2021

Claim #s: _____

_____

_____

_This is the process to appeal the decision made regarding a claim that is not listed above._

Claim #: 001

Explain the reason for your appeal of any claims not listed above. Be as specific as you can.

_I am dissatisfied with the response I was given because_ I FEEL THAT IT IS EGREGIOUSLY UNJUST. IN THIS INSTANCE CDCR 602 LOG NO. 114099 AND ALL ATTACHED DOCUMENTS AS WELL AS REFERENCED DOCUMENTS ARE INCORPORATED BY REFERENCE, INCLUSIVE IN ADDITION AS IF STATED HEREIN. IN CONTRADICTION TO WHAT THE CDI(N)(A) ASSERTS, I MOST CERTAINLY DID ASK FOR WITNESSES AT MY HEARING, AS LOG # 114099 CLEARLY DEMONSTRATES. I WANTED AND NEEDED WITNESSES. I MADE THE REQUEST AND THE LT. (SHU) ASKED ME WHAT THEY WOULD SAY. THEY WERE NEVER SUMMONED. IN VEHEMENT CONTRADICTION TO THE ASSERTION (F THE CDI(N)(A) IN THE RESPONSE PROVIDED IN § III (4.1), I NEVER CHOSE TO PARTICIPATE IN ANY VIOLENT ACT. THE DEFINITION OF SELF-DEFENSE, AS THE CDI(N)(A) PROFFERS, IS ONE OF MANY CON-CEIVABLE SCENARIOS AND IRONICALLY DESCRIBES EXACTLY WHAT I WAS DOING MINUS THE BLOCKING OF BLOWS. I WAS TRYING TO BACK AWAY AND LEAVE THE AREA WHILE MILLS WAS SWINGING AT ME. AT SOME POINT, AFTER BEING SWUNG AT REPEATEDLY, MILLS' KNUCKLE GRAZED MY LIP AND I STRUCK HIM ONCE. WHILE HE WAS ON THE GROUND, HE THEN PUT HIS HANDS UNDER HIMSELF ATTEMPTING TO GET BACK UP. I LEANED TOWARD HIM IN VIGILANCE AND WAS THEN PEPPER SPRAYED. THAT WAS IT. A SINGLE BLOW, WHILE I WAS BEING ATTACKED. (CONT'D ON REVERSE)

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have the documents, identify them as best you can below:

YES. AS AFOREMENTIONED, 602 LOG # 114099; THE CANCELLATION NOTICE; THE 7219's ATTACHED MOST CERTAINLY DON'T SUPPORT THE CLAIMS OF THE RE'S. IF WE WERE STRIKING EACHOTHER AS THEY CLAIMED THERE WOULD BE RED MARKS ALL OVER THE BOTH OF US. THERE IS A SINGLE MARK ON MILLS' ENTIRE BODY. MY COMPLEXION RETAINS A NATURAL REDDISH HUE UPON MY CHEST AREA AND MY KNUCKLES DO AS WELL. I WAS WORKING WHEN THIS INCIDENT TOOK PLACE AND PRIOR TO THE INSTANCE I HAD BEEN PUTTING ON AND TAKING OFF RUBBER GLOVES WHICH MAY HAVE CONTRIBUTED TO THE CONDITION OF MY HANDS.

**DISTRIBUTION**    Original: Claimant's File    Copies: DAI, DAPO, and Claimant

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

Claim #: __001 (CONT'D)__

Explain the reason for your appeal. Be as specific as you can.

*I am dissatisfied with the response I was given because* MILLS WAS OUT OF HIS CELL WHEN HE SHOULDN'T HAVE BEEN. I TOLD THE SHO THAT MILLS CAME OUT OF HIS CELL IN AN EFFORT TO START A FIGHT WITH ME AND CONTRARY TO WHAT THE CDW(A) STATES, THAT IS NOT IRRELEVANT. IF THE OFFICER WOULDN'T HAVE ERRONEOUSLY OPENED THE DOOR, THERE WOULDN'T HAVE BEEN AN INCIDENT AT ALL. WHAT I BELIEVE IS HAPPENING IS THAT THE COLLEAGUE OF THE RE'S IS SUP-PORTING HIS COLLEAGUE. THE COLLEAGUE OF THE SHO IS SUPPORTING HIS/HER COLLEAGUE. THIS IS A CASE OF "THE INMATE IS GUILTY NO MATTER WHAT." THE SHO HAD TO KNOW FROM THE 7219's THAT THE RE'S WEREN'T SHOOTING IT STRAIGHT. I WOULD IMAGINE THE CDW(A) WOULD NOTICE AS WELL. MY DISCIPLINARY HISTORY PAINTS A PICTURE OF AN PROPENSITY TO "CHOOSE TO PARTICIPATE IN VIOLENT ACTS", AS CLAIMED BY THE CDW(A). THE MANNER IN WHICH THIS RVR HAS BEEN ADJUDICATED IS ALARMING TO ME. I'VE BEEN FALSELY PORTRAYED AND FOUND GUILTY WHEN I WAS DEFENDING MYSELF WHICH I HAVE EVERY RIGHT TO DO. IF YOU TAKE A CURSORY GLANCE AT THE DISCIPLINARY HISTORY OF INMATE MILLS, THAT PAINTS A PICTURE AS WELL. THIS PROCESS IS SUPPOSED TO BE JUST AND FAIR. BUT WHAT HAS TAKEN PLACE DOESN'T SPEAK TO FAIRNESS NOR ACCOUNTABILITY. I HAVE NOT BEEN PROVIDED MY CONSTITUTIONALLY PROTECTED DUE PRO-CESS UNDER THE 14TH AMEND. OF THE U.S. CONST AND ARTICLE I SECTION 7 OF THE CALIF CONST. THIS PROCESS HAS NOT CONSIDERED A TOTALITY OF FACTORS OBJECTIVELY BUT RATHER HANDPICKED AND UNDERFOCUSED ON THE FACT AND STATE-MENT OF MY STRIKING MY ATTACKER THEREBY INIQUITOUSLY MANIPULATING THIS PROCESS AND SUPPORTING THE RE'S & SHO.

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have the documents, identify them as best you can below:

YES, THE HIGHLIGHTED SECTIONS OF THE RESPONSE I WAS GIVEN CLEARLY CONTRADICT EACH OTHER. THE CDW(A) APPARENTLY CLAIMS THAT THE DHR SHOWS I DON'T ASK FOR WITNESSES YET EVEN THE SHO SAID HE COULDN'T REMEMBER FOR SURE. THAT DOESN'T SOUND DEFINITIVE. AS AFOREMENTIONED, I DID WANT WITNESSES AND I ASKED FOR THEM. LIEUTENANT MAY DIDN'T SUMMON THEM BUT INSTEAD ASKED ME WHAT THEY WOULD TELL HIM. AFTER RELATING THE ACCOUNT, THE SHO TOLD ME HE BELIEVED ME BUT THE MOMENT MILLS WAS KNOCKED DOWN, I BECAME THE AGGRESSOR. I DISAGREE. IF THE DEPARTMENT WON'T MAKE THIS RIGHT, THEN I SHALL SEE THEM IN COURT. AS OF THIS WRITING, THE GOVERNMENT CLAIMS HAVE ALREADY BEEN SUBMITTED.

**Reminder:** Please attach all documents in your possession that support your claim(s).

Please note that this form and supporting documents will not be returned to you.

Claimant Signature: _[signature]_                Date Signed: 1/8/21

MAIL TO:          Office of Appeals
          Department of Corrections and Rehabilitation
          P.O. Box 942883
          Sacramento, CA 95811



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# CLAIMANT APPEAL CLAIMS DECISION RESPONSE

**Re:** Appeal Claims Decision Response

**Offender Name:** KOHUT, JONATHAN JOSEPH      **Date:** 09/18/2021
**CDC#:** AN1162
**Current Location:** PVSP-Facility D      **Current Area/Bed:** D 001 2 - 226001U

**Log #:** 000000123815

**Claim # 001**
**Institution/Parole Region of Origin:** Pleasant Valley State Prison      **Facility/Parole District of Origin:** PVSP-Facility D
**Housing Area/Parole Unit of Origin:**
**Category:** Offender Discipline      **Sub-Category:** Serious Rules Violation Report

The California Department of Corrections and Rehabilitation (CDCR) Office of Appeals received this claim on 07/19/2021.

California Code of Regulations, title 15, provides the Office of Appeals 60 calendar days to complete a response. Due to the expiration of time, this response by the Office of Appeals will be the only response.

You do not need to resubmit this claim to the Office of Grievances or to the CDCR Office of Appeals.

**Decision: Time Expired**

State of California                                                    Department of Corrections and Rehabilitation
                                                                                              Office of Appeals

# **M**emorandum



To:        Claimant

Subject:   **TIME-EXPIRED RESPONSE FROM THE OFFICE OF APPEALS**

Thank you for submitting your appeal for review by the California Department of
Corrections, Office of Appeals. Pursuant to Title 15, section 3486(i)(10), if the Office
of Appeals is not able to respond to a claim in 60 calendar days, as in this case, then
the claim must be answered "time-expired." As a result, the answer provided by the
Office of Grievances remains unchanged and this appeal is now closed. No further
action will be taken by the Department and no appeal of this action is permitted under
the regulations.

Also, pursuant to Title 15, section 3485(e), "The appeal package submitted by the
claimant shall be stored electronically by the Department. The CDCR Form 602-2 shall
contain a notification to the claimant that the documents submitted will not be returned
to the claimant." Therefore, your Form 602-2 and any supporting documents are not
included with this response.

However, a copy of your entire appeal package is maintained in your Central File. The
process for requesting copies of documents contained in Central Files, often referred
to as an *Olsen* review, can be found in the Department Operations Manual, sections
13030.16 and 13030.17.

Thank you,

HOWARD E. MOSELEY
Associate Director

-EXHIBIT #4-

Government Claim No.#21005089                    4.1-2

NOTE:    Upon requesting a conformed copy from the DGSOORIM, this document reproduction
is what was provided. Two entire sections have been omitted which are the
description of circumstances, as well as the explanation of the state's
liability. As set forth in the pleadings, administrative remedies have been
thoroughly exhausted.

---

STATE OF CALIFORNIA
DEPARTMENT OF GENERAL SERVICES

**GOVERNMENT CLAIM**

DGS ORIM 006 (Rev. 08/19)

OFFICE OF RISK AND INSURANCE MANAGEMENT

Government Claim Program

**RECEIVED JUN 07 2021**

## CLAIMANT INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| Knox | Jonathan | D |

INMATE OR PATIENT IDENTIFICATION NUMBER (if applicable)
#AJ1142

BUSINESS NAME (if applicable)

TELEPHONE NUMBER

EMAIL ADDRESS

| MAILING ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| P.O. Box 8500/D1-226 | CORCORAN | CA | 93212 |

IS THE CLAIMANT UNDER 18 YEARS OF AGE?  ☐ Yes  ☒ No

INSURED NAME (Insurance Company Subrogation)

IS THIS AN AMENDMENT TO A PREVIOUSLY EXISTING CLAIM?  ☐ Yes  ☒ No

EXISTING CLAIM NUMBER (if applicable)

EXISTING CLAIMANT NAME (if applicable)

## ATTORNEY OR REPRESENTATIVE INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| | | |

TELEPHONE NUMBER

EMAIL ADDRESS

| MAILING ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| N/A | | | |

## CLAIM INFORMATION

STATE AGENCIES OR EMPLOYEES AGAINST WHOM THE CLAIM IS FILED
CDCR: H MAX R BLANCAS, S WISNEW, M RESES

LATE CLAIM EXPLANATION (Required, if incident was more than six months ago)

DATE OF INCIDENT
4/28/21

CIVIL CASE TYPE (Required, if amount is more than $10,000)
☐ Limited ($25,000 or less)   ☒ Non-Limited (over $25,000)

INCIDENT LOCATION
SHU 4B_ADMINISTRATIVE BLDG DURING HEARING OFFICERS FALSIFIED REPORTS WHICH LED TO CLAIMANT'S RVR

DOLLAR AMOUNT OF CLAIM
CIVIL RIGHTS VIOLATION, UNLIMITED

DOLLAR AMOUNT EXPLANATION

SPECIFIC DAMAGE OR INJURY DESCRIPTION
REASON: VALLEY STATE PRISON: DINING BUILDING 1. PROGRAM OFFICE
SPECIFIC DAMAGE OR INJURY DESCRIPTION: SENIOR HEARING OFFICIALS RESULTING FROM DUE PROCESS VIOLATIONS.
CLAIMANT WAS ISSUED RVR#7083330 AND SUBSEQUENTLY FOUND GUILTY OF FIGHTING. AS A RESULT OF THIS
RVR, CLAIMANT WILL MOST LIKELY BE GIVEN A 6-YR. DENIAL FROM THE PAROLE BOARD, IN ADDITION TO HAVING

EXHIBIT # 4.2

**DGS** CALIFORNIA DEPARTMENT OF
**GENERAL SERVICES**

Governor Gavin Newsom

11/24/2021

Jonathon J. Kohut AN1162
P.O. Box 8500
Coalinga, CA 93210

RE: Claim 21005089 for Jonathon J. Kohut AN1162 against Department of
Corrections and Rehabilitation

Dear Jonathon Kohut,

Government Claims Program (GCP) staff completed its investigation of your claim
and rejected it for the following reasons.

The claim involves complex issues that are beyond the scope of analysis and legal
interpretation typically undertaken by the GCP. Claims involving complex issues are
best determined by the courts. Therefore, staff did not make a determination
regarding the merit of the claim, and it is being rejected so you can initiate court
action if you choose to pursue this matter further.

If you choose to pursue court action in this matter, it is not necessary or proper to
include the GCP in your lawsuit unless the GCP was identified as a defendant in your
original claim. Please consult Government Code section 955.4 regarding proper
service of the summons.

If you have questions about this matter, please feel free to contact GCP by phone,
mail, or email using the contact information below. Please remember to reference
the assigned claim number (21005089) in your communication.

Sincerely,

*Shm Emi*

Sheila Emami, Program Analyst
Government Claims Program
gcinfo@dgs.ca.gov

**WARNING:** Subject to certain exceptions, you have only six (6) months from the
date this notice was personally delivered or deposited in the mail to file a court action
on this claim. See Government Code Section 945.6. You may seek the advice of an
attorney of your choice in connection with this matter. If you desire to consult an
attorney, you should do so immediately.

## -EXHIBIT #5-

- Letter to CDCR OIA                          5.1.1-4
- Response Letter/AW & CDO M. Martin          5.2.1

TRANSCRIPT OF PETITIONER'S CORRESPONDENCE TO CDCR OFFICE OF INTERNAL
AFFAIRS, DATED AUGUST 15, 2021, RE: STAFF MISCONDUCT AT PVSP, D FACILITY

Dear Sir and/or Madam,

I am writing to apprise your office of an issue down here at PVSP
that I'm very much hoping can be afforded some attention. I've
filed 602's(three altogether related to the incident described
below)and requested that OIA be involved but all I was able to
be provided was a confidential inquiry that did not reveal the
truth I was very much hoping it would. This attempt to get this
report and all attatchments removed from my C file, is my last
hope before I proceed to court.

I'm a 46 yr. old lifer serving a 46 yr. to life sentence for a
very ugly situation that took place back in 1996. I've been down
for nearly 18 yrs. now and the ride has been a difficult one and
what I'm incarcerated for certainly doesn't make it easier.
Notwithstanding the situation and the specifics, I spend my time
in study and education in hopes of being able to earn a parole
date hopefully by the time I'm 50. I've been blessed with a youth
offender parole consideration which I have no intention of squandering.

Back in April of this year, I was working my assigned position
as a porter in my housing unit(D1). On the night of the 28th,
I was approached by an inmate determined to get into a physical
altercation with me. Despite repeated challenges, insults, and
crowd inflation;I held my composure and declined to engage in
any fight. I was booed, laughed at, called names and everything
else that a perceived coward you'd expect to be subjected to,
in such a situation in this environment, is in fact subjected
to.

Eventually, the jeers of people and I believe perceived cowardice
on my part, prompted this guy to begin swinging at me. I wasn't
struck, and what I did at that moment, was retreat. As I continued
to back up, this guy kept swinging at my face for the first 8
to 10 swings, I kept effectively out of range. Growing frustrated
from not being able to make contact, the guy finally quickened his

advance on me enough to slightly graze my lip with his knuckle. When he did, still retreating, I swung a single time and backward momentum notwithstanding, I was able to land the blow that effectively knocked him down.

At that moment, I looked at him and he was knocked out for a split second, then his eyes refocused and he immediately put his hands under himself to get up again. Still perceiving potential harm to myself, I leaned toward him to ready myself and at that moment, I was sprayed(O.C.)by Officer Wiswell. This effectively ended the incident. I was proned out and as I was, I felt pepper spray hit the back of my head, and my hands.

As procedure and protocol dictate, medical staff saw each of us and they completed 7219 forms. We were both issued RVR's and when I received mine, that's about the time I went into shock. If your office could indulge me by pulling up RVR#7083306 with supplemental incident log #21670 it would be greatly appreciated. The moment I read the RVR, I knew that not only was the officer that wrote it extremely dishonest in his report, but that he most likely didn't see anything except the very end. I attribute that to being in the office and the windows are usually covered which obstructs their view. I immediately filed 602 log no. 114099, alleging staff misconduct.

A few days later, I filed another 602 upon reviewing the incident report package. One thing is clear to me, is that the three officers in the building that night; S. Wiswell, R. Blancas, and M. Reyes are covering for eachother in their reports. They are unequivocally in violation of CDCR policy and their reports are extremely unethical and to put it bluntly, lies in their totality. Their description of the incident consists of nothing more than boilerplate language that is descriptive of a run-of-the-mill fight.

If I thought that was the worst to come, not hardly. On reading the report submitted, I knew I'd need witnesses. I even mentioned it in the 602(1st)I filed, log no.114099(see section B.'action requested'), yet on the date of the hearing, 5/21/21, Lt. May, the SHO would not call the witnesses I requested(4 total). Then,

I see my final copy, the box for witnesses is checked 'none'. Again, staff misconduct.

Lt. May when I requested inmates Hernandez, Sedillo, Farley, and Sanchez, asked me,"What are they going to tell me?". I reiterated my account and told the SHO,"They'll tell you the truth." To make a long story short he found me guilty. I tried explaining that I was attacked and that I had the right to keep myself free from harm. I didn't fight anybody, I swung one time, that's it.

When you look at the 7219's, they completely support my account and unequivocally display the dishonesty of the reporting officers. Anybody with 30 days of experience in CDCR, could tell anybody, that inmates do not strike eachother repeatedly to the "face and torso" and leave not a single welt, or reddened area.It doesn't happen, period! It is entirely and absolutely, inconceivable to me, that Lt. May didn't take a quick glance at the 7219's and immediately become aware of the inaccuracy of the reports submitted by his subordinates, that's a fact!

This entire process has been a complete sham that resulted in a severe miscarriage of justice. The so called 'confidential inquiry' conducted, was a farce as well. They deny me my witnesses at the hearing then show up and handpick their own? What kind of due process is that? This is nothing more than a game of "cover-for-your-colleague" going on at PVSP and the Lt. conducting the inquiry did the same as the SHO.

I've filed a Government Claim as a result and I will be bringing a claim in federal court against these CDCR officials for their blatant, and intentional violations of my constitutional due process rights. These types of faults and practices within the department serve to the serious detriment of those  like myself that need to go before the parole board, and they need to be eradicated.. I would expect a lot more from so called "peace officers" that have enormous salaries handed to them on the backs of the tax payers.

I've no intention of going before the BPH, and being accountable

for the <u>blatant</u> <u>lies</u> <u>and</u> <u>misconduct</u> of these officers, nor will I relent, until the truth is made clear. These officers lied and their superiors knew it, and made a conscious choice to ignore it, and have me pay the tab for it. Ms. Allison and Mr. Moseley should be informed because if some action isn't taken to remove these lies from my file, they'll be defendants right alongside these excuses for peace officers down here at PVSP.

I very much appreciate your time and attention to this matter, all I did was defend myself and what took place was very unjust and simply not right.

                              Sincerely and Respectfully,

                                  /s/  JKohut

                            Jonathon Kohut #AN1162

EXHIBIT # 5.2

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**PLEASANT VALLEY STATE PRISON**
P O Box 8500
Coalinga, California 93210-8500

Date :     September 27, 2021

To    :     KOHUT, JONATHAN J. CDCR NO.: AN1162
            DFB1-226U
            Pleasant Valley State Prison

Subject:   **LETTER ADDRESSED TO OFFICE OF INTERNAL AFFAIRS**

This letter is in response to your letter submitted directly to Office of Internal Affairs (OIA), dated August 15, 2021, which was forwarded on September 17, 2021, to my office for review and disposition.

Mr. Kohut, you have circumvented the Inmate Request for Interview (GA-22)/ CDCR Grievance procedure by directing your appeal directly to OIA. Your requests can be properly answered via the GA-22/CDCR Grievance process when submitted to your building staff or deposited in the grievance box at which time it will be routed to the appropriate area for the best response.

The allegations contained within your letter have been adequately addressed through multiple claims, grievances, supervisorial reviews, and second level appeals submitted by yourself regarding all of these matters contained within your letter. Specifically Offender Grievance Tracking (OGT) numbers 000000114099, 000000123815, 000000125056, 000000126695, and 000000146204. A review of Rules Violation Report 7083306, reveals you admit to your active involvement in the charge of fighting, and to striking the additional suspect, knocking him down and advancing towards him, at which time chemical agents were utilized to stop your actions. Additionally in your letter you identify that the other participant was "knocked out" for a split second, which would satisfy the Serious Bodily Injury (SBI) requirements of loss of consciousness, an enhancement in which you were not charged with.

Mr. Kohut, I commend you on your efforts to maintain a positive program while you continue to seek every rehabilitative opportunity presented to you, as your goal is to become a productive member of society. Rehabilitation starts from within, which includes accepting responsibility for your own actions. Once you hold yourself accountable for your own behavior, you will begin moving forward with your life and increase your chances of success.

In the future, I am instructing you to submit a GA-22 or CDCR 602-1 via the proper channels with your concerns and they will be addressed in accordance with departmental guidelines. Your continued failure to comply with this directive will result in the delay of resolution to your request.

M. F. MARTIN
Associate Warden
Housing C/D/E/STRH/EEO
Pleasant Valley State Prison

<u>-EXHIBIT #6-</u>

- Response Letter/CDCR Ombudsman                    6.1

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                                 GAVIN NEWSOM, GOVERNOR

**OFFICE OF THE OMBUDSMAN**

1515 S Street, Sacramento, CA  95811
P.O. Box 942883
Sacramento, CA 94283-0001

November 5, 2021

Jonathan Kohut AN1162
PVSP D 001 2 226
PO Box 8500
Coalinga, CA 93210

Subject:  **RECEIPT OF CORRESPONDENCE (CASE # 64400)**

Your letter to the Office of the Ombudsman was received. Due to the high volume of inquiries received, the Ombudsman cannot intervene in all individual cases. However, please note that the Office monitors all correspondence to identify systemic issues, which is a critical element of the Ombudsman's roles as a liaison between institutions and Headquarters, and as a policy advisor for the Administration.

☒ Your recent letter to the Office of the Ombudsman was received and based on a review of your letter and of the appropriate policies and procedures relevant to your concerns, the Ombudsman has determined that: **your grievance history revealed you attempted several times to have this reviewed and reversed. You were denied at all levels meaning you have exhausted your administrative remedies. You are now free to file a writ and take the matter to court in an attempt to get what you are seeking. Our office is not able to assist you with moving this forward to the courts or provide legal advice. Please proceed to the courts if you feel it is necessary to get your justice you are looking for regarding this event.**

☐ A review of the information you provided indicates that you have not exhausted your administrative remedies to resolve your issue and/or staff complaint. In accordance with CCR, Title 15 § 3481, you may file a grievance against any departmental decision, action, condition, or policy which you can demonstrate as having a material adverse effect upon your welfare. Please file a grievance to resolve this matter. If you would like to send a copy, this Office can monitor your grievance for a timely and accurate response. Please note: this Office does not process grievances or appeals, nor does contacting this Office extend your timeframe for filing a grievance or appeal.

☐ An inquiry relative to your issue has been forwarded to the appropriate staff for review.

☐ No review will be conducted. This issue is outside of the scope of this Office.

Thank you for contacting the Office of the Ombudsman.

S. Jacobs, Ombudsman
Office of the Ombudsman

<u>-APPENDIX A-</u>

•   Declaration of Plaintiff

1  J. Kohut #AN1162
   PVSP/D1-226
2  P.O. Box 8500
   Coalinga, Ca. 93210
3  In Pro Per

4                      UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
5                            FRESNO DIVISION

6  JONATHON J. KOHUT,                   Case No.

7         Plaintiff,

8  vs.                                  PLAINTIFF'S   DECLARATION IN
                                        SUPPORT OF  42 U.S.C.§1983/
9                                       28 U.S.C.§1367 CIVIL RIGHTS
   M. Martin, et al.,                   COMPLAINT
10
          Defendants.
11

12

13

14

15

16              · DECLARATION OF PETITIONER ·

17         I Jonathon J. Kohut, Petitioner in the instant matter, hereby
18  state and declare the following:

19  1.    That I am at least 18 yrs. of age, a resident of California, and a U.S.
20  citizen.

21  2.    That I am the Petitioner, and true author/compiler of the attached
22  writ petition, memorandum of law/exhibits presented to the Court on my own
    behalf.
23
24  3.    That I bring this particular action due to relief sought as well as
    certain evidentiary standards of review pursuant to CCP§1094.5(c),(e), and
25  preservation of fundamentally vested rights.

26  4.    That it is my unwavering position that PVSP/CDCR officials have abused
27  their discretion, and insodoing, have violated my rights to both Due Process,
    as well as Equal Protection under both state, and federal constitutions.
28

                                      (1)

5. That on 4/28/21, around 8:45 p.m., I was working as a building porter on D-Facility, bldg.#1, at Pleasant Valley State Prison, in Coalinga, Ca., an institution of CDCR.

6. That as I was wiping a table in the C section side of the dayroom, I was approached by an Inmate Mills(#BH8082), who was in an adrenaline filled state and challenging me to a fight, which I declined. At this point, I looked around for the officers and didn't see them anywhere.

7. That as I proceeded to another table, Inmate Mills persisted in his challenging me, balled up his fists raising them, and began to advance on me. My initial reaction was to outstretch my left arm and say to Mills,"stay back man, don't do it."

8. That as Inmate Mills advanced on me, I began retreating with my arm outstretched, and at this time he began swinging repeatedly at my face, continuously missing as I backed up. As this was taking place, the officers were not present anywhere that I could see.

9. That I had retreated 30-35 feet across the dayroom when Inmate Mills quickened his advance, and in lunging forward, he was able to skim my upper lip with his knuckle at which point I returned a single blow, catching his left orbital/cheek area and effectively knocked him to the ground.

10. . That it is important to note, that the contact with my lip described (#9), was essentially the initial contact. Prior to that instant, missing blows had glanced off of my outstretched arm only;blows which I felt did not warrant any engagement on my part.

11. That it is further important to note, that a split second prior to my lip being skimmmed, in my peripheral view, I saw the two officers exit the office.

12. That as soon as my fist made contact, my adrenaline spiked and in surveying Inmate Mills at that moment, I watched his eyes refocus, and he immediately put his hands underneath himself and began to get up.

13. That I do vaguely recall the officers yelling,"get down, get down!", however my primary focus was on the physical threat I was facing, and noticing his getting up.

14. That at that moment, I began to lean forward as I arrived at the

decision to nudge Inmate Mills back to the ground and thereby neutralize any threat to myself.

15.   That as I leaned toward Inmate Mills, I was pepper sprayed directly in my eyes which caused me to immediately prone out, face down with my hands up near my head, away from Inmate Mills. As I lay there, pepper spray hit me in the back of my head and on the backs of my hands.

16.   That both myself, and my attacker were subsequently seen by medical personnel for 7219 assessments.(Exhibits #1.1,1.2)

17.   That on 4/30/21 I received a disciplinary RVR(Rules Violation Report), Log No.#7083306 authored by an Officer S. Wiswell which presented an account filled with false depictions and fabrications that were extremely prejudicial prejudicial in nature. (Exhibits #2.1.1-4, 2.2.1)

18.   That I immediately drafted a 602 and submitted it to PVSP's Office of Grievances on 5/3/21, Log No.#114099.(Exhibit #3.1.1- 6) The incident was being classified as a 'fight'(see RVR), it is my adamant contention that it was self-defense.

19.   That this 602(#18), attacked the falsities submitted by S. Wiswell and alleged staff misconduct pursuant to 15 CCR,§§3084(g),3084.5(a)(4), and requested that the 602 be adjudicated as a staff complaint. In addition, I expressed to the OOG, that witnesses would be needed if I were to receive a fair hearing, and that waivers entered by PVSP officials on my behalf be voided.(see Exhib.#3.1.1-2;3.1.5)

20.   That shortly following the filing of the 602(#'s 18,19), I received a Log Incident Report, #21670 with supplemental reports authored by all 3 officers that were in the building at the time of the incident. Upon receipt I noticed that both Officers R. Blancas(floor staff #2), and M. Reyes(Control Booth), presented false narratives as well. I submitted an additional 602 asserting that; 1) Alleged observations of all 3 officers were completely unsupported by medical personnels' assessments with respect to documented/ undocumented injuries(Exhib. #1.1,1.2), 2) Staff error played a significant role in the incident, and 3) Most paramount was that I was defending myself by warding off an attack.

21.   That upon information and belief, PVSP/CDCR officials have turned a blind eye to their colleagues' submissions of false reports, and have denied

me relief to which I am legally entitled.

22. That on 5/21/21, a hearing was conducted for the purpose af hearing and adjudicating RVR #7083306, charging me with fighting(15 CCR§3005(d)(1)). The hearing was presided over by Senior Hearing Officer Lieutenant May, also present in addition to myself was an officer who stood back at the door to the office.

23. That during the hearing I brought several supporting factors to the attention of the SHO that not only brought into question the accuracy of officers' narratives, but that illustrated on my part that I was acting in self-defense and that labelling the incident a fight was an inaccurate mischaracterization. That I pointed out the absence of any RVR's for fights in my minimal disciplinary history, while Inmate Mills was getting into fights with frequency. Also that at the time of the incident, the prison was on a modified programming schedule, Inmate Mills was out of bounds under 15 CCR§3015(a) in being out of his cell in violation of protocol, and subject to disciplinary action.

24. That I explained my focus in prison was education, and earning a parole date from the BPH. That I have a very slim disciplinary history, but in terms of what was just and proper, I went far beyond what the law requires in an effort to avoid fighting at all in fact. That under California law, the moment I had apprehension of pending physical harm instilled; I had been assaulted under the law, and had every right to defend myself, yet I still exercised restraint and chose to retreat instead.

25. That during the hearing, I requested 4 specific witnesses at which time the SHO inquired as to what they would tell him. That I explained that they would explain that I did everything imaginable to avoid having to fight which was the absolute, categorical truth. That my witnesses were not summoned to the hearing and the SHO subsequently claimed that I had not requested any witnesses.(Exhib. #2.3.4)

26. That I was found guilty by the SHO's abuse of discretion which is shown by the SHO's conscious choices in; 1) Refusing to call my witnesses, a unquestionable violation of my due process, 2) The intentional and malicious ignoring of the inconsistencies in the reports, and 3) SHO's perjury in his claiming that I did not request witnesses.(Exhib #5.4) Lieutenant May renewed his claim in a confidential inquiry

(4)

this claim when asked in connection with a confidential inquiry conducted by a Lieutenant Martin.(#29)

27.    That based on the inconsistencies between medical personnels' observations, staff narratives, and each and every factor brought to the attention of PVSP/CDCR officials/administrators, officials within the department had far beyond a reasonable amount of facts and information at their disposal to not only review, but to reverse, modify, or dismiss the findings pursuant to 15 CCR§3312(b)(1). Yet they still opt to uphold the decision and continue to defend it.

28.    That in one OOG decision, a CDW(A), M. Faulkner made the claim that Inmate Mills being let out of his cell erroneously, was irrelevant and the 602 was denied.

29.    That as a result of the allegations of staff misconduct, PVSP/CDCR officials conducted a 'confidential inquiry'. This inquiry took place follwing the RVR hearing and as aforementioned was conducted by a Lieutenant Martin. Upon information and belief, PVSP officials ignored the fact that their colleagues perjured themselves as a result of the CDCR custom that has been allowed to develop and persist over the course of decades, where the inmate is wrong no matter what.

30.    That during such confidential inquiry, I was interviewed by Lieutenant Martin. The interview took place in the office that the officers emerged from during the incident(#11). During the interview, the office windows were covered and so obstructed, that I was unable to actually point or show the Lieutenant where the incident occurred. That during the interview, I explained at length the fact that Inmate Mills had a single mark on him to the area in which I've maintained the entire while that I struck him a single time. Yet the reports submitted by all 3 officers claim that we were striking striking eachother to the"face and torso", which simply did not happen. 'Officials' claims are falsities and unsubstantiated by observations of medical personnel, the account that I have maintained, the truth, is entirely supported.

31.    That eventually a decision was rendered that the Officers had not violated CDCR policy which I was not surprised to receive. What else that was not lost on me was that the Chief Disciplinary Officer that ratified the

findings of the SHO, was one M. Martin, an Assoc. Warden at PVSP, which poses the question of whether or not this official shares a familial relation with th "Martin" that conducted the 'confidential inquiry'. (Exhib. # 2.3.9)

32.   That subsequent to the guilty finding, I filed a complaint with the DGS, a Government Claim(Claim No. #21005089), as well as amendments after the confidential inquiry upheld the findings, and on 11/24/21, the claim was rejected by the DGS.(Exhib. #4.1-2) The copies of the actual claims are of poor quality but have still been attached as exhibits.

33.   That upon being denied relief through the 602/inquiry, I sent a letter letter to CDCR's Office of Internal Affairs which I perhaps should not have sent. The OIA did not respond directly to me, instead they sent the letter I sent them to AW M. Martin, the same CDO that ratified the findings of the SHO. This letter was hand written but has been transcribed and attached as Exhibit #5.1-4 for the Court's review.

34.   That to the best of my knowledge, no other action was taken by the OIA aside from sending the correspondence I sent to AW M. Martin. In turn, I received an extremely patronizing reponse from an individual that takes the position that apparently 'true rehabilitation' does not include one's right to self-defense.(see Exhib. # 5.2.1)

35.   That upon receiving the response from AW M. Martin, I contacted CDCR's Office of the Ombudsman. The letter I sent the OIA was included in the mailing and prompted the attached response labelled Exhibit # 6.1 for the Court's review if necessary.

36.   That I have spent years preparing for the opportunity to go before the BPH.

37.   That in my personal opinion, I exercised a great deal of restraint in this particular situation when I had every right to engage with physical force much sooner than I did.

38.   That I am 46 yrs old currently, and that over the course of my life, my hand (right) has been severely damaged due to repeated injuries called 'boxer breaks', that occurred in my youth up until my late 20's.

39.   That as a result of those breaks, I now have literally my ring and

last metacarpals pushed back to such a degree, that my middle knuckle takes on a spiky form that has the potential to seriously damage other men when utilized for those sorts of purposes.

40.    That over the time incarcerated I've spent, I've yet to see a fight when guys don't leave marks or welts on one another when exchanging blows. That these officers lied and PVSP/CDCR is willfully ignoring it.

41.    That CDCR officials utilize a sort of template when reporting these types of incidents out of sheer laziness.

42.    That if Inmate Mills were not out of his cell, there would not have been any incident at all, another factor ignored by officials.

43.    That on this very same facility, many attacks take place over in D-4, as set forth in the petition. The non-aggressor, never gets issued an RVR.

44.    That there is literally no difference between the repeated occurences taking place in D-4, and the instance before the Court save the GP vs. SNY component;I was attacked and they have refused to acknowledge that factor.

45.    That the SHO's finding that I became the aggressor, is unreasonable and another mischaracterization displaying the lengths went to in order to find me guilty.

46.    That I do not possess the capacity to switch my adrenaline off on a dime after being attacked;it is beyond my mental capability.

47.    That when I leaned toward Inmate Mills when he was down, I had no intentions of striking or punching him. I was going to give him a nudge so as to keep him down.

48.    That at that particular point, I was hoping more than anything, that the officers would intervene but they did not.

49.    That I truly believe Lieutenant May had his mind set to find me guilty no matter what evidence I presented.

50.    That it is beyond my comprehension how anyone can look at or review the narratives submitted by staff(Exhib. #2.21113)and reach the conclusion that they are accurate after seeing the 7219's.

51.    That it is further beyond my comprehension, how false narratives could be utilized to find a man with so much to lose guilty of anything.

52.    That a significant disparity exists amongst inmates who are issued RVR's within the prisons of CDCR, when it comes to inmates who already have a date, and those trying to be found suitable by way of a board hearing.

53.    That a violent RVR, is the absolute worst kind of RVR one can have prior to going before the board.

54.    That the BPH places their strictest scrutiny on the 5 yr. period that immediately precedes the suitability hearing.

55.    That these factors(#52-54), create per se a major disparity amongst the inmates for purposes of Due Process/Equal Protections afforded these inmates and the consequences they receive in connection with a guilty RVR finding.

56.    That while one inmate may receive 90 days added to their sentence, and have those 90 days restored after a subsequent disciplinary-free period, an inmate with a pending hearing, has bought himself/herself in a best case scenario, the same restoration following the same disciplinary-free period, and in addition at least a three year denial from the board.

57.    That an inmate going into a hearing who proceeds to take any course that does anything other <u>THAN TAKE FULL RESPONSIBILITY AND BE ABSOLUTELY AND COMPLETELY ACCOUNTABLE FOR ANY AND ALL DISCIPLINARY RVR'S IN THEIR FILE</u>, is essentially dooming themselves to a lengthy denial period, which starts at 3 years.

58.    That based on the above-mentioned factors(#56-57), Due Process and Equal Protections if I understand these theories correctly, the law says that they need to be commensurate with the actual consequences or the punishment with which an individual is faced with.

59.    That in either scenario suggested, Due Process/Equal Protection will demand that either individual be provided with specific protections that serve to maintain procedural fairness such as a hearing and the right to have witnesses testify on one's behalf.

60.    That the individual faced with a board hearing is facing a more grave end result possibility rendering heightened Due Process/Equal Protections affordance and applications appropriate for that reason.

61.    That when accused of a disciplinary violation, an individual in CDCR

has no other option than to depend on his accuser to play by the rules, and to ensure him some measure of Due Process/Equal Protection to which the law entitles that individual.

62.    That the interests of each party are conflicting in nature, with the accuser, controlling the entire adjudication process rendering even a semblance of fairness, deeply controversial.

63.    That every motivation an accused has serves to show that he did not violate any policy, or that in this case, that he had a fundamentally vested right to act in the course that he did.

64.    That CDCR officials have no interest in finding people not guilty for the violations CDCR officials accuse them of.

65.    That the more or longer the process continues, the longer the unfair decisions and practices persist.

66.    That CDCR officials have not a single measure in place to ensure that individuals faced with RVR 115's, are afforded their rights during their proceedings.

67.    That whatever the SHO writes, is taken as truth and this instance is a glaring example of why such practice essentially makes a mockery of Due Process.

68.    That if BPH hearings are transcribed as official quasi-judicial proceedings requiring Due Process protections, than it stands to reason that any proceeding significantly attatched or related to such proceedings should rightfully be afforded similar protections.

69.    That proceedings could be digitally recorded and catalogued for re retrieval purposes when required because as it stands now, an SHO is making a claim that I never asked for witnesses when a 602, filed long prior to my hearing tells a different story.(see Exhib.#3.1.1, Sec. B action req'd)

70.    That these types of situations are a breeding ground for violations of Due Process by those whose interests conflict, and have been for decades, and I just happen to be fortunate enough to have filed that 602(Ex.#3.1.1-6) if I had not I may have a significant issue.

71.    That I am beseeching upon the Court that a need for these types of protections are required if individuals being housed by CDCR are to receive

Due Process and Equal Protection during proceedings controlled by parties with conflicting interests to the accused.

72.    That even a form such as that of the nature in the petition, and the alternative petition suggested remedy, that would cure any conflicting claims of whether or not witnesses were requested.

73.    That this occurence, is commonplace in CDCR; they always claim that witnesses were declined or unrequested.

74.    That the truth of it upon information and belief, is that these are claims being made by officials under pressure to assist their colleagues, not the inmates.

75.    That if an SHO were to become known as providing fairness to inmates, it would automatically be mischaracterized as an SHO being on the side of an inmates which would doom his workplace political career, upon information and belief of course.

76.    That I am nearly positive, that if the Court were to review all the 602's claiming that they were never provided witnesses that were requested, that they would find that it is not only a common complaint that should have been addressed a long time ago, but also that these types of 602's are shot down and the position of the SHO is upheld because as in this case, the SHO lies and claims the inmate did not request any witnesses, again.

77.    That in most cases, it ends there, but this is categorically, and unequivocally not that kind of party, and this issue will be pushed until my fundamentally vested rights are recognized and upheld.

78.    That these people violate individuals' due process everyday on an astronomical scale but the sad reality is that most individuals in here do not have the know-how, or are not able to properly articulate or bring their claims before a court of law in order to obtain the proper relief.

79.    That I hope Kathleen Allison, Rob Bonta, and R. Godwin are paying close attention as well as their agents, because I will not let this go until I have received either a fair hearing or a dismissal of these charges, and that measures are put in place to make an already extremely unfair process a little more fair and give it some semblance of having some integrity to it.

80.    That this issue may not appear to hold much weight in the big picture,

(10)

but days and/or years of peoples' lives cannot be replaced, but measures most certainly be put in place that any process that serves to that sort of detriment, is fundamentally fair, and carried out with honesty and integrity integrity.

81. That inmates already at a severe disadvantage with the 'some evidence' standard that is used to convict innocent person after innocent person, upon information and belief.

82. That utilizing this standard(#81), an individual could arguably be found guilty of just about anything, in just about any circumstance.

83. That I defended myself, and that I did not start any fight, and that what really took place, was that although I didn't start a fight, my hand was forced to finish one, plain and simple.

     Under the penalty of perjury, pursuant to 28 U.S.C.§1746
          I hereby declare that the foregoing is true and correct, yet affording an appropriate degree of exceptance to portions set forth upon information and belief which I do in fact believe to be true, and have been set forth in the utmost of good faith.

X _____          Dated: 4/21/2022
Jonathon J. Kohut,
Petitioner/Declarant,
In Pro Per.

(11)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

JONATHON J. KOHUT

v.                                                    Case Number:  *1:22-CV-00472-HBK(PC)*

M. MARTIN, et al.

**PROOF OF SERVICE**

/

I hereby certify that on _____*08/29/2023*_____, I served a copy

of the attached *FAC & VOLUME OF EXHIBITS* _____,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

*ASP/410-18-5L, P.O. BOX 904, Avenal, Ca. 93204-0904*

(List Name and Address of Each
Defendant or Attorney Served)

*U.S. DISTRICT COURT*
*2500 TULARE ST., ROOM 1501*
*FRESNO, CA. 93721-2201*

I declare under penalty of perjury that the foregoing is true and correct.

*(PLAINTIFF)*

(Signature of Person Completing Service)