1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11    JONATHAN KOHUT,                    Case No.  1:22-cv-00472-HBK (PC)

12                 Plaintiff,            ORDER TO ASSIGN A DISTRICT JUDGE

13          v.                          FINDINGS AND RECOMMENDATIONS TO
                                        DISMISS CASE[1]
14    M. MARTIN, et al.,
                                        (Doc. No.  13)
15                 Defendants.
                                        FOURTEEN-DAY OBJECTION PERIOD
16

17          Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's First

18    Amended Complaint.  (Doc. No. 13, "FAC").  For the reasons set forth below, the undersigned

19    recommends the district court dismiss the FAC because it fails to state any cognizable federal

20    claim.

21                            **SCREENING REQUIREMENT**

22          A plaintiff who commences an action while in prison is subject to the Prison Litigation

23    Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

24    against a governmental entity, its officers, or its employees before directing service upon any

25    defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

26    dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon

27    _____

28    [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
      (E.D. Cal. 2022).

1  which relief may be granted, or if it seeks monetary relief from a defendant who is immune from

2  such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

3        At the screening stage, the court accepts the factual allegations in the complaint as true,

4  construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.*

5  *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.

6  2003).  The Court's review is limited to the complaint, exhibits attached, materials incorporated

7  into the complaint by reference, and matters of which the court may take judicial notice.  *Petrie v.*

8  *Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  A court

9  does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted

10  deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical

11  to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See*

12  *Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

13        The Federal Rules of Civil Procedure require only that a complaint include "a short and

14  plain statement of the claim showing the pleader is entitled to relief . . .."  Fed. R. Civ. P. 8(a)(2).

15  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient

16  factual detail to allow the court to reasonably infer that each named defendant is liable for the

17  misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,

18  572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

19  sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.

20  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not

21  required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

22  statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required

23  to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.

24  2009) (internal quotation marks and citation omitted).

25        If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant

26  is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*

27  *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

28  245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how

1   to cure the defects.  Such advice "would undermine district judges' role as impartial

2   decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

3   n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

4   faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

5   amendments previously allowed . . .." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

6   (9th Cir. 2010).

7                 **BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

8        Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by

9   filing a civil rights complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  On August 15, 2023, the

10   undersigned screened Plaintiff's complaint and found that it failed to state any cognizable

11   constitutional claim.  (*See* Doc. No. 12).  The Court advised Plaintiff of the pleading deficiencies

12   and applicable law and afforded Plaintiff the opportunity to file amended complaint.  (*Id*.).

13   Plaintiff timely filed a first amended complaint.  (Doc. No. 13) ("FAC").

14        The events in the FAC took place at Pleasant Valley State Prison ("PVSP").  (*See*

15   *generally id*.).  The FAC identifies the following PVSP staff as Defendants: (1) M. Martin, Chief

16   Disciplinary Officer; (2) Lt. Martin; (3) D. May, Senior Hearing Officer; (4) S. Wiswell,

17   Correctional Officer; (5) R. Blancas, Correctional Officer; (6) M. Reyes, control booth officer;

18   and (7) John/Jane Does #1-3.  (*Id*. at 2).  The FAC consists of 84 pages with 60 pages comprising

19   exhibits, which include, *inter alia*, various records related to the April 28, 2021 incident; copies

20   of Plaintiff's grievances and appeals and the institutional responses; a letter Plaintiff sent to the

21   Office of Internal Affairs; and Plaintiff's Declaration dated April 21, 2022.  (*See id*. at 23-83).

22   The FAC alleges violations of the Fourteenth Amendment due process clause and various other

23   constitutional and statutory state law claims.  (*See id*. at 13-21).  The following facts are

24   presumed to be true at this stage of the screening process.

25        On April 28, 2021, Plaintiff was wiping down the tables in the day room of his housing

26   unit when another inmate, Jacob Mills, challenged him to a fight.  (*Id*. at 4 ¶ 14).  Plaintiff

27   declined, but Mills "balled up his fists and began swinging at Plaintiff."  (*Id*. ¶ 15).  Mills chased

28   Plaintiff, who attempted to retreat, and continued swinging at Plaintiff.  (*Id*. ¶¶ 15-16).  At this

point, Defendants Wiswell and Blancas entered the day room, an alarm had been activated, and unspecified Defendants "began to yell orders to 'get down! get down!'" (*Id*. ¶ 16).  After Mills landed a blow that grazed Plaintiff's lip, Plaintiff returned a single blow that struck Mills in the head, knocking him to the ground.  (*Id*. ¶¶ 16-17).  Plaintiff "maintained his focus on Mills who had landed on his rear . . . and immediately put his hands underneath himself in an attempt to rise to his feet.  Plaintiff leaned forward anticipating further attack" and at that moment Defendant Wiswell pepper sprayed Plaintiff in the face.  (*Id*. at 4-5 ¶ 17).  Plaintiff "proned out" and Defendant Wiswell "delivered another burst of pepper spray to the back of Plaintiff's head, and the backs of his hands, and thereby ending the incident." (*Id*. at 5 ¶ 17).  Plaintiff was then taken to the D Facility gym for decontamination and medical evaluation.  (*Id*. ¶ 18).

On April 30, 2021, Plaintiff received a copy of the RVR related to the April 28, 2021 incident.  (*Id*. ¶ 19).  Plaintiff then filed a 602 on May 3, 2021 "through which Plaintiff made his requirement of witnesses on his behalf for adjudication purposes abundantly clear."[2] (*Id*.).  The same grievance also challenged the narrative submitted by Defendant Wiswell.  (*Id*.).  Plaintiff later received an incident log package with three narratives submitted by unspecified Defendants who were present during the April 28, 2021 incident.  (*Id*. ¶ 20).  Plaintiff then filed another grievance challenging the accounts of the incident offered by Defendants Blancas and Reyes. (*Id*.).

On May 21, 2021, a disciplinary hearing was held regarding Plaintiff's RVR where Defendant May served as the senior hearing officer.  (*Id*. ¶ 21).  During the hearing, Plaintiff states he requested four witnesses to testify on his behalf.  (*Id*.).  He claims the witnesses would have corroborated his claim of self-defense.  (*Id*.).  Defendant May refused to permit Plaintiff to call any witnesses and did not provide any written reasons for denying Plaintiff's request for witnesses.  (*Id*. at 5-6 ¶ 21).  At noted supra, the Court may consider the exhibits attached to and incorporated in a complaint.  Here, Plaintiff attaches a copy of the nine-page Disciplinary Hearing

---

[2] The attached inmate grievance states in pertinent part, "I want RVR #2083306 removed from my C file for starters. If not, I'd request that on PG3, my apparent waiver be changed to 'requested.'  *I want an IE to interview some witnesses for my process*." (Doc. No. 13 at 45) (emphasis added).

Results Report ("DHRR").  (*Id.* at 35-43).  According to the DHRR, Plaintiff was charged with a rule violation for "fighting" in violation of Section 3005(d)(1).  (*Id.* at 35).  Under the "Witnesses" section as to whether "Witnesses Requested at Hearing" the box "None" is checked.  (*Id.* at 38).  Plaintiff offered the following statement in his defense:

> Staff have this all wrong, the reports state we were swinging at each other striking in the face and upper torso area is not true, he was swinging at me. [T]he 7219's don't reflect injuries or marks to support the reports.  He was trying to fight me and I told him I wouldn't fight him.  He came at me swinging at me.  I kept backing away from him trying to avoid fighting. [H]e swung at me and grazed my lip, so I punched him one time and knocked him down.  I thought he was going to get up so I advanced toward him again. The[n] staff sprayed us.

(*Id.* at 39).  May ultimately found Plaintiff guilty of the charge of "fighting" and he lost 90 days credit.  (*Id.* at 5 ¶ 21; 42).  Further, the FAC asserts that the guilty finding has:

> adversely affected [Plaintiff's] legal standing with respect to suitability proceedings before the [Board of Parole Hearings].  The narratives that are now a part of the Plaintiff's permanent record, contain degrees of prejudicial and false compositions within their scope that the Plaintiff simply cannot overcome during a suitability hearing.

(*Id.* at 6 ¶ 22).

Plaintiff subsequently filed a grievance challenging Defendants May's finding of guilt for the RVR of fighting.  (*Id.* at 6 ¶ 28).  The Office of Grievances at PVSP conducted an inquiry in response to Plaintiff's grievance, in which Defendant May stated he could not recall whether witnesses were requested at Plaintiff's disciplinary hearing.  (*Id.* ¶¶ 28-29).

Defendant Lt. Martin[3] investigated Plaintiff's grievance, which alleged Defendants Wiswell, Blancas, and Reyes had made false statements.  (*Id.* at 9 ¶ 29).  Plaintiff contends the process was a sham and that Martin "wilfully [sic] ignore[d] information provided during the inquiry process, furnished by eye witnesses to the events . . . on April 28, 2021."  (*Id.* at 9-10 ¶¶ 29-30).  Ultimately, Defendant Lt. Martin did not find wrongdoing by Defendants Wiswell, Blancas, and Reyes, and Defendant May did not change his guilty finding on Plaintiff's RVR.  (*Id.* at 9-10 ¶ 30).

---

[3] The FAC sues both a Lt. Martin and M. Martin, Chief Disciplinary Officer at PVSP.

Plaintiff then sent a letter to the Office of Internal Affairs ("OIA") describing the facts of his case and prison officials' responses.  (*Id*. at 10 ¶ 31).  OIA sent Plaintiff a letter in response and forwarded Plaintiff's letter to M. Martin, the Chief Disciplinary Officer at PVSP.  (*Id*.).  M. Martin sent a letter to Plaintiff responding to the allegations made in the letter to OIA.  (*Id*. at 10 ¶ 31, 69).

Based on the above events, the FAC asserts the following claims: (1) due process claims against Defendants M. Martin, Lt. Martin, and D. May under the Fourteenth Amendment and Article I, Sections 7 and 28[4] of the California Constitution (*id*. at 13-15); (2) Bane Act claims against unspecified Defendants (*id*. at 15); (3) "Abuse of Process" claims against all Defendants (*id*. at 15-17); (4) "Conspiracy" claims against all Defendants (*id*. at 17-18); (5) "Negligence" claims against unspecified Defendants (*id*. at 18-19); and (6) "Intentional Infliction of Emotional Distress" ("IIED") claims against unspecified Defendants (*id*. at 19-21).

As relief for the above claims, Plaintiff seeks a declaratory judgment, a "mandate/directive to CDCR" requiring the agency to implement a witness request/denial form any time an inmate is issued an RVR for a serious infraction, compensatory and punitive damages, costs, and any additional relief the court deems just.  (*Id*. at 21-22).

## APPLICABLE LAW AND ANALYSIS

### A.  Fourteenth Amendment Due Process

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa*

---

[4] The Court notes that Article I, Section 28, commonly known as "Marsy's Law," "added to the California Constitution a number of rights that may be exercised by crime victims, including the right to recover restitution from convicted criminals."  *People v. Subramanyan*, 246 Cal. App. 4th Supp. 1, 5 (Cal. App. Dep't Super. Ct. 2016).

1  |  *Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

2  |       A prisoner is entitled to certain due process protections when he is charged with a

3  |  disciplinary violation.  *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (*citing Wolff v.*

4  |  *McDonnell*, 418 U.S. 539, 564-571 (1974)).  "Such protections include the rights to call

5  |  witnesses, to present documentary evidence and to have a written statement by the fact-finder as

6  |  to the evidence relied upon and the reasons for the disciplinary action taken."  *Id.*  These

7  |  procedural protections, however, "adhere only when the disciplinary action implicates a protected

8  |  liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on

9  |  the inmate in relation to the ordinary incidents of prison life.'"  *Id.* (quoting *Sandin v. Conner*,

10 |  515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).  Prisoners bear

11 |  the burden to demonstrate that they did not receive due process during their disciplinary hearing.

12 |  *See Parnell v. Martinez*, 821 Fed. Appx. 866, 866-867 (9th Cir. 2020).

13 |       Although the level of the hardship must be determined on a case-by-case basis, and "[i]n

14 |  *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the

15 |  baseline from which to measure what is atypical and significant in any particular prison system,"

16 |  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013).  Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process."  *Ramirez*, 334 F.3d at 860.

     1.  <u>No Liberty Interest Alleged</u>

     It is unclear whether Plaintiff is serving an indeterminate or determinate sentence. Nonetheless, Plaintiff fails to set forth facts sufficient to demonstrate that the deprivations he suffered because of his disciplinary conviction—90 days loss of good time credits and potential

difficulty obtaining parole—imposed the type of "atypical and significant hardships" required by *Sandin* to invoke liberty interests entitled to *Wolff*'s procedural safeguards. *See Salinas v. Montgomery*, 2019 WL 2191349, at *5 (S.D. Cal. May 21, 2019) (finding allegations that inmate was "assessed a good-time credit loss of 90 days" insufficient to show atypical and significant hardship); *see also Ivy v. Wingo*, 2020 WL 5709278, at *6 (S.D. Cal. Sept. 24, 2020) (finding that "90 days of lost good time credit, [loss of] privilege group, and package privileges" did not impose "atypical and significant hardships" on plaintiff sufficient to trigger due process protections). The FAC's vague and speculative contention that Plaintiff will face greater difficulty obtaining parole is insufficient to trigger the due process protections of *Wolff*. *See Ramirez*, 334 F.3d at 861; *Sandin*, 515 U.S. at 487 (finding no due process protections triggered where plaintiff failed to show disciplinary conviction "will *inevitably* affect the duration of his sentence") (emphasis added); *see also Bennett v. Curry*, 386 F. App'x 645, 646 (9th Cir. 2010) (dismissing due process claim where plaintiff found "unsuitable for parole for several independently adequate reasons and not only because of the disciplinary record he seeks to challenge. Because his disciplinary record did not 'alter the balance' in his parole suitability determination, its effect if any on the duration of his sentence 'is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.'") citing *Sandin*, 515 U.S. at 487. While Plaintiff's guilty finding of the April 30, 2021 RVR for fighting stemming from Plaintiff and Mills' interactions on April 28, 2021 may affect his future suitability for parole, there are no facts to indicate it "will inevitably affect the duration of his sentence" and thus Plaintiff has not established a liberty interest triggering the due process protections of *Wolff*. Thus, because the undersigned finds the FAC fails to articulate a liberty interest that implicates the due process clause, the FAC fails to state a viable Fourteenth Amendment claim.

      2.  <u>Even if Liberty Interest Claim is Barred by *Heck*</u>

Assuming that Plaintiff has a liberty interest to be free from the loss of his good time credit and is entitled to due process because the loss of good time credits affects the duration of his sentence, a finding of such violations would render the finding of guilt and subsequent good-time credits forfeiture invalid. Thus, Plaintiff may not bring a claim under § 1983 "unless and

until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of writ of habeas corpus." *Butterfield v. Bail,* 120 F.3d 1023, 1025 (9th Cir.1997); *see also Edwards v. Balisok,* 502 U.S. 641, 648 (1997).  This favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits.  *Edwards* at 646-48.  Referred to as the *Heck*[5] bar, this restraint is triggered whenever a state prisoner "seeks to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* though a judicial determination that necessarily implies the unlawfulness of the State's custody."  *Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005).

Despite Plaintiff not expressly requesting as relief to have his RVR invalidated and his good time credits restored, "[a] challenge under section 1983, seeking only damages and declaratory relief for procedural due process violations is also barred if the nature of the challenge would necessarily imply the invalidity of the deprivation of good-time credits." *McCoy v. Spidle*, 2009 WL 1287872, at *7 (E.D. Cal. May 6, 2009), *aff'd,* 2009 WL 4730912 (E.D. Cal. Dec. 7, 2009) (citing *Edwards,* 502 U.S. at 643).  Consequently, Plaintiff cannot challenge the RVR in this action.

Finally, alternatively, as set forth more fully below, the FAC nonetheless fails to state an underlying federal or constitutional violation.

### 3.   No Claim Based on False RVR

The filing of a false disciplinary report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights.  *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  If a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (internal citation omitted)), *aff'd* 453 F. App'x 751 (9th Cir. 2011); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal.

---

[5] *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

1    June 16, 2009) ("Although the Ninth Circuit has not directly addressed this issue in a published

2    opinion, district courts throughout California . . . have determined that a prisoner's allegation that

3    prison officials issued a false disciplinary charge against him fails to state a cognizable claim for

4    relief under § 1983."), *aff'd* 393 F. App'x 488 (9th Cir. 2010).  Thus, to the extent Plaintiff

5    alleges a due process violation based on the filing of a false RVR against him, this alone fails to

6    state a Fourteenth Amendment claim.

7            4.   No Claim Based on Refusal to Call Witnesses

8            The gravamen of the FAC centers on Plaintiff's allegations that he acted in self-defense

9    on April 28, 2021.  Essentially, Plaintiff disagrees with the finding of guilt for fighting because he

10   was not the instigator of the April 28, 2021 altercation with Mills and maintains he was acting in

11   self-defense.  Plaintiff points to his request for witnesses, both in a grievance submitted prior to

12   the May 21, 2021 hearing and at the RVR hearing itself.  (Doc. No. 13 at 5 ¶¶ 19, 21).  In his 602

13   dated May 3, 2021, Plaintiff states, "I want an IE to interview some witnesses for my process."

14   (Doc. No. 13 at 45).  Plaintiff's vague reference to "my process," appears to be a request to prison

15   officials to interview witnesses concerning his claims that Defendants Wiswell, Blancas, and

16   Reyes submitted false reports.  There is no reference to his request to have specific witnesses

17   testify at the RVR hearing.

18           Nonetheless, the Court accepts as true the assertion in Plaintiff's FAC that he requested

19   four witnesses to testify at the RVR hearing but Defendant May "both failed to summon the

20   witnesses requested, and moreover, failed to enter any reason in the findings that would explain

21   the reasoning relied upon for such a denial."  (*Id*. at 6 ¶ 21).  As noted above, due process requires

22   that a prisoner be provided an opportunity at a disciplinary hearing, when consistent with

23   institutional safety and correctional goals, to call witnesses and present documentary evidence in

24   his defense. "The Supreme Court's decision in *Wolff* bestows a substantial amount of discretion

25   upon prison officials to decide whether and when to call live witnesses at a disciplinary hearing."

26   *Buren v. Waddle*, 2016 WL 5890030, at *2 (E.D. Cal. Oct. 11, 2016).  Prison officials may

27   choose to refuse an inmate's request to call witnesses for reasons of "irrelevance, lack of

28   necessity, or the hazards presented in individual cases."  *See Wolff*, 418 U.S. at 566.  In *Wolff* the

                                                    10

1   court suggested it would be "useful," but did not require, that prison officials provide written

2   reasons for denying an inmate the right to call live witnesses.  *Baxter v. Palmigiano*, 425 U.S.

3   308, 323 (1976).  Meanwhile, "[A]s a general rule, inmates 'have no constitutional right to

4   confront and cross-examine adverse witnesses' in prison disciplinary hearings."  *Santibanez v.*

5   *Havlin*, 750 F. Supp.2d 1121, 1128 (E.D. Cal. 2010)

6         Here, the FAC alleges that Defendant May did not call any witnesses and provided no

7   reasons for doing so.  Initially, the Court notes that Plaintiff does not identify the inmate

8   witnesses he wishes to call or what, if any testimony, they would have offered.  Further, the Court

9   notes that Plaintiff was charged with fighting and admitted both in writing and at the hearing that

10   he struck and "knocked down" Inmate Mills.  (Doc. No. 13 at 4-5 ¶ 17, *id*. at 56).  While

11   Defendant May denies that Plaintiff made any request for witnesses at the hearing, (*see id*. at 56),

12   accepting Plaintiff's averment as true that he did make such a request, the Court finds that

13   Defendant May's decision to deny such a request would have been justified by irrelevance or lack

14   of necessity because Plaintiff admitted to the conduct that justified the guilty finding for fighting.

15   The Court takes judicial notice that Section 3005(d)(1), with which Plaintiff was charged,

16   prohibits the use of force or violence by inmates: "Inmates shall not willfully commit or assist

17   another person in the commission of an assault or battery to any person or persons, nor attempt or

18   threaten the use of force or violence upon another person." 15 Cal. Code Regs. §

19   3005(d)(1)).  Section 3005(d)(1) does not make an exception for force used in self-defense.  *See*

20   *Tooker v. Mak*, 2022 WL 2668381, at *9 (N.D. Cal. July 11, 2022), appeal dismissed, 2023 WL

21   387042 (9th Cir. Jan. 9, 2023) ("Prison regulations do not make a distinction between initiating a

22   fight or defending oneself in a fight." *citing* 15 Cal. Code Regs. 3005(d)(1)).

23         In view of the "substantial amount of discretion" afforded to prison officials in

24   considering requests for live witnesses, *Buren*, 2016 WL 5890030 at *2, the Court does not find

25   that Defendant May's actions rose to the level of a due process violation.  Moreover, Defendant

26   May was not required to document his reasons for denying the request for witnesses.  *Baxter*, 425

27   U.S. at 323.

28         ////

1        5.   No Claims Based on Guilty Finding at Disciplinary Hearing

2        The FAC also contends that Defendant May's guilty finding at the disciplinary hearing

3    constituted a due process violation.  The FAC asserts that under the Fourteenth Amendment,

4    "Plaintiff had a fundamental right to . . . have a decision rendered based on a preponderance of

5    the evidence submitted in connection with the proceedings."  (Doc. No. 13 at 13 ¶ 41).  The FAC

6    asserts that the preponderance of the evidence did not support a guilty finding against Plaintiff.

7        While Plaintiff recites the evidentiary standard set forth by the California Code of

8    Regulations[6], federal due process requires only that "some evidence" support the decision of the

9    hearing officer.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "The standard is not

10   particularly stringent and the relevant inquiry is whether 'there is any evidence in the record that

11   could support the conclusion reached' . . . ."  *McDaniel v. Chavez*, 2014 WL 1333991, at *6 (E.D.

12   Cal. Apr. 3, 2014) (citing *Hill*, 472 U.S. at 455-56).

13       The FAC does not allege that there was no evidence in the record that could support

14   Plaintiff's guilty finding; indeed, Plaintiff admits that he struck and knocked down inmate Mills.

15   (Doc. No. 13 at 4-5 ¶ 17, *id.* at 56).  Rather the FAC asserts that Defendant May did not

16   sufficiently weigh evidence that Plaintiff was not the aggressor and was acting in self-defense.

17   This is insufficient to set forth a due process violation.  There was clearly, at a minimum "some

18   evidence" to support Defendant May's finding that Plaintiff was guilty of "fighting" given that

19   Plaintiff admitted to striking Defendant Mills.  Defendant May's decision thus comported with

20   the "some evidence" requirement under the Fourteenth Amendment.  *See Hill*, 427 U.S. at 455.

21   As to the FAC's allegation that Defendant May was not an "impartial decisionmaker," this

22   appears to be based primarily on Plaintiff's disagreement with the guilty finding.  (*See* Doc. No.

23   13 at 7 ¶ 24).  However, because the facts alleged reflect that Plaintiff was provided at least the

24   minimum due process required under *Wolff*, the FAC fails to state a Fourteenth Amendment due

25   process claim based on his guilty finding at the disciplinary hearing.

26

27   [6] Cal. Code Regs. tit. 15 § 3320(l) ("Any finding of guilt shall be based upon determination by the
     official(s) conducting the disciplinary hearing that a preponderance of evidence submitted at the hearing
28   substantiates the charge").

1      6.   No Claim Based on Failure to Reverse the Guilty Finding

2          Liberally construed, the FAC also alleges that Defendant Martin, the Chief Disciplinary

3  Officer, and Defendant Lt. Martin, who investigate Plaintiff's allegations of fabricated charges,

4  both violated Plaintiff's due process rights because they did not sufficiently weigh evidence

5  supporting Plaintiff's account of the April 28, 2021 incident and ultimately did not reverse

6  Plaintiff's guilty finding.  (Doc. No. 13 at 9-10 ¶¶ 29-31).

7          As noted above, the Court does not find that there was any underlying procedural

8  deficiency in the disciplinary hearing that resulted in Plaintiff being found guilty of fighting.

9  Thus, Defendants Martin and Lt. Martin's conclusions to that effect were not erroneous.

10  Moreover, the investigation conducted by Defendant Martin was done pursuant to Title 15 of the

11  California Code of Regulations, which governs the administration of state prisons and does not

12  confer a private right of action for inmates to sue to enforce the regulations or to obtain damages.

13  *Vasquez v. Tate*, 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012) (finding no federal due

14  process violation based on prison's failure to comply with Title 15 because no authority

15  establishes the existence of a private right of action).  Plaintiff contends that Defendant Martin's

16  investigation was "carried out and conducted in a manner inconsistent with the purpose for which

17  it is actually intended under the controlling authority (15 CCR)" because, *inter alia*, Defendant

18  Lt. Martin ignored eyewitness accounts that supported Plaintiff and relied on "fabricated

19  accounts" submitted by Defendants Wiswell, Blancas, and Reyes.  (Doc. No. 13 at 9 ¶ 29).  Even

20  if Defendant Martin's investigation was deficient, however, because there is no liberty interest in

21  compliance with state prison regulations or investigations conducted under those regulations,

22  Plaintiff's allegations of a flawed investigation do not set forth a cognizable federal constitutional

23  violation.

24          Similarly, Plaintiff's allegation that Defendant Martin, the Chief Disciplinary Officer,

25  failed to take any action in response to the letter from the Office of Internal Affairs does not set

26  forth a due process violation.  "A prison official's denial of a grievance does not itself violate the

27  constitution."  *Penton v. Johnson*, 2019 WL 6618051, at *6 (E.D. Cal. Dec. 5, 2019) (quoting

28  *Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015)).  "An allegation that a prison official

1   inappropriately denied or failed to adequately respond to a grievance, without more, does not

2   state a claim under § 1983." *Evans*, 637 F. App'x at 288, citing *Ramirez*, 334 F.3d at 860

3   ("*Ramirez*'s claimed loss of a liberty interest in the processing of his appeals does not satisfy this

4   standard, because inmates lack a separate constitutional entitlement to a specific prison grievance

5   procedure."); *see also Alford v. Gyaami*, 2015 WL 3488301, at *10 n.2 (E.D. Cal. June 2, 2015)

6   ("Even if prison officials delay, deny, or erroneously screen out a prisoner's inmate grievance,

7   they have not deprived him of a federal constitutional right."); *Wright v. Shannon*, 2010 WL

8   445203, at *5 (E.D. Cal. Feb. 2, 2010) (allegations that prison officials denied or ignored inmate

9   appeals failed to state a cognizable claim under the First Amendment).  As noted above, Plaintiff

10  was afforded federally required due process through the disciplinary hearing held on May 21,

11  2021, and any deficiency in Defendant Martin's response to Plaintiff's informal appeals does not

12  give rise to a Fourteenth Amendment due process claim.

13          7.   No Conspiracy Claim Stated

14          A claim of conspiracy requires specific factual allegations showing two or more persons

15  intended to accomplish an unlawful objective to cause Plaintiff harm and took some concerted

16  action in furtherance thereof.  *See Gilbrook v. City of Westminster*, 177 F.3d 839, 859-61 (9th Cir.

17  1999).  Thus, Plaintiff must explicitly allege an agreement between Defendants to deprive him of

18  a constitutional right and conclusory allegations of conspiracy are insufficient to state a § 1983

19  claim.  *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (*per curiam*).

20          Here, the FAC alleges no specific facts for the Court to infer Defendants had an

21  agreement to deprive Plaintiff of a right as to support the existence of a conspiracy.  Instead, the

22  FAC contains only conclusory allegations that Defendant Martin "acted in a conspiracy with

23  other officials" to deny Plaintiff unspecified "relief to which he was entitled." (Doc. No. 13 at 8).

24  This conclusory allegation is insufficient to state a claim for relief under § 1983.  *See Claiborne v.*

25  *Beebe*, 2008 WL 544577, at *3-4 (E.D. Cal. Feb. 26, 2008), *report and recommendation adopted*,

26  2008 WL 942661 (E.D. Cal. Apr. 7, 2008).  Further, even assuming arguendo the FAC contained

27  specific factual allegation to show a conspiracy amongst Defendants, because the Court has

28  determined there is no underlying constitutional violation for Plaintiff's other claims, Plaintiff's

14

conspiracy allegations necessarily fail. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy is not itself a constitutional tort under § 1983 . . . [i]t does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation.") (internal citations omitted).

For the reasons set forth above, the FAC fails to allege any federal or constitutional violation.

### B. State Law Claims

Finally, the FAC alleges various state law claims under the California Constitution, the Bane Act, and various common law tort causes of action.  Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  28 U.S.C. § 1367.  As Plaintiff has not stated a cognizable claim for relief under federal law, the Court need not analyze those state claims.  *See, e.g., Smithee v. California Corr. Inst.,* 2019 WL 3842854, at *8 (E.D. Cal. Aug. 15, 2019) ("because Plaintiffs failed to state a cognizable claim under federal law [ ] the Court declines to expend limited judicial resources analyzing the merits of the state law claims"), report and recommendation adopted, 2019 WL 4260140 (E.D. Cal. Sept. 9, 2019).

### CONCLUSION AND RECOMMENDATION

Based on the above, the undersigned finds Plaintiff's FAC fails to state any cognizable claim.  The FAC suffers from many of the same pleading deficiencies that the undersigned identified and explained to Plaintiff in screening his original Complaint.  Plaintiff reasserted many of the same claims that were asserted in his Complaint, including due process violations based on the allegedly false RVR, his disciplinary hearing, and the denial of his grievances and appeals.  Despite being provided with guidance and the appropriate legal standards, Plaintiff was unable to cure the deficiencies identified above.  A plaintiff's repeated failure to cure a complaint's deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and internal quotation marks omitted).  Thus, the undersigned recommends that the district court dismiss the FAC without further leave to amend.  *McKinney v. Baca*, 250 F. App'x 781 (9th Cir.

2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint).

ACCORDINGLY, it is **ORDERED**:

The Clerk of Court randomly assign this case to a district judge for consideration of these Findings and Recommendation.

It is further **RECOMMENDED**:

The First Amended Complaint (Doc. No. 13) be dismissed under § 1915A for failure to state a claim and this case be dismissed.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    December 28, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

16